**RAVERT PLLC**
Gary O. Ravert
16 Madison Square West, FL 12, #269
New York, New York 10010
Tel: (646) 961-4770
Fax: (917) 677-5419

*Attorneys for 31st Street Funding LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MAJOSTAN CORP., | Case No. 23-40331 (ESS) |
| *Debtor.* | |

## 31st STREET FUNDING LLC'S DISCLOSURE STATEMENT

     31st Street Funding LLC ("31st Funding" or the "Plan Proponent"), a secured creditor of Majostan Corp., the debtor and debtor-in-possession in this Chapter 11 Case (the "Debtor"), hereby proposes and files this Disclosure Statement (the "Disclosure Statement") with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), in connection with 31st Funding's proposed Plan of Liquidation (as it may be amended, altered, modified or supplemented as described herein, the "Plan"). A copy of the Plan and exhibits thereto is annexed to this Disclosure Statement as **Exhibit A**. The principal asset of the Debtor is that certain mixed use real property located at 23-52 31st Street, Astoria, New York, NY 11105 [Block: 842, Lot: 28] (the "Property"). All capitalized terms used in this Disclosure Statement have the meanings ascribed to such terms in the Plan, except as otherwise indicated, and in the Auction Sale Procedures.

**THIS DISCLOSURE HAS NOT BEEN APPROVED BY THE COURT AND WILL BE OFFERED FOR SOLICITATION OF VOTES IN CONNECTION WITH THE PLAN, *IF AND ONLY IF VOTING IS REQUIRED*, ONLY ONCE APPROVED BY THE COURT.**

**THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RESULT FOR ALL HOLDERS OF CLAIMS AND INTERESTS AND THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S CREDITORS AND INTEREST HOLDERS. THE PLAN PROPONENT STRONGLY URGES ALL HOLDERS OF CLAIMS IN IMPAIRED CLASSES, IF ANY,**

RECEIVING BALLOTS THAT ARE ENTITLED TO VOTE ON THE PLAN, *IF AND ONLY IF REQUIRED*, TO VOTE TO ACCEPT IT ONCE THE DISCLOSURE STATEMENT HAS BEEN APPROVED AND THE PLAN SENT OUT FOR REVIEW AND VOTING.

THIS DISCLOSURE STATEMENT IS DESIGNED TO SOLICIT YOUR ACCEPTANCE OF THE ATTACHED PLAN, IF SOLICITATION IS REQUIRED, AND CONTAINS INFORMATION RELEVANT TO YOUR DECISION.  PLEASE READ THIS DISCLOSURE STATEMENT, THE PLAN AND THE OTHER MATERIALS COMPLETELY AND CAREFULLY. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE BANKRUPTCY COURT BEFORE OR CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT AND THE PLAN.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS WITH RESPECT TO THE PLAN OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT.  NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, THE LIQUIDATING ESTATE OR THE VALUE OF THE DEBTOR'S PROPERTY HAVE BEEN AUTHORIZED OTHER THAN AS SET FORTH HEREIN.

EACH CREDITOR AND INTEREST HOLDER OF THE DEBTOR SHOULD CONSULT WITH THEIR LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, IF SOLICITATION IS REQUIRED, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## I.    <u>INTRODUCTION</u>

This Disclosure Statement is being furnished by the Plan Proponent pursuant to section 1125 of the Bankruptcy Code, in connection with the solicitation of Ballots, if and only if required by the Bankruptcy Court, to accept or reject the Plan from Holders of Claims in Classes 1, 2, 3, 4, 5 and Interests in Class 6.

Pursuant to Section 1121(b) of the Bankruptcy Code, for the first 120 days of a bankruptcy case the Debtor and the Debtor alone has the exclusive right to file a plan of reorganization or liquidation and solicit acceptances thereto.  The 120th day after January 31, 2023, the Filing Date of this chapter 11 Bankruptcy Case, was June 1, 2023 and by that date the Debtor did not file a plan or extend its time to do so.  The 'exclusive period' having terminated, on April 11, 2024, the Plan Proponent filed a Plan of Liquidation with the Bankruptcy Court.  Contemporaneously herewith, the Plan Proponent filed this Disclosure Statement with the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and in connection with the solicitation of Ballots to accept or reject the Plan (the "<u>Solicitation</u>").

On _____ __, 2024, the Bankruptcy Court determined that this Disclosure Statement, along with any changes requested by the Court which are included herein, contains "adequate information" in accordance with section 1125 of the Bankruptcy Code.  Pursuant to section 1125(a)(1) of the Bankruptcy Code, "adequate information" is defined as "information of a kind, and in sufficient detail, as far as is

reasonably practicable in light of the nature and history of the debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1).

**The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan for _____ \_\_, 2024 (prevailing Eastern Time), before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800.  The hearing may be adjourned from time to time without further notice other than by announcement in the Bankruptcy Court on the scheduled date of such hearing or any adjourned hearings thereof.  Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Plan Proponent listed below so as to be received by _____ \_\_, 2024 (prevailing Eastern Time).  Counsel on whom objections must be served are:**

Ravert PLLC
16 Madison Square West, FL12, #269
New York, New York 10010
Attn.: Gary O. Ravert, Esq.
Email: gravert@ravertpllc.com
*Attorneys for 31st Street Funding, the Plan Proponent*

Rosalyn Maldonado P.C.
108 S. Franklin Avenue, Ste 11
Valley Stream, New York 11580
Email: rmaldonado@rosalynmaldonadopc.com
*Attorneys for Majostan Corp.*

United States Trustee
Office of the United States Trustee for the Eastern District of New York
One Bowling Green
New York, New York 10004
Attn: Nazar Khodorovsky, Esq.
Email: nazar.khodorovsky@usdoj.gov

Attached hereto as Exhibits are copies of the following documents:

**Exhibit A:**  The Plan and Exhibits thereto;

**Exhibit B:**  The Debtor's chapter 11 petition and associated documents, the Rule 1007 Affidavit, and the Schedules.

**Exhibit C:**  The Debtor's monthly operating reports filed since the Filing Date.

**Exhibit D:**  Proposed Order of the Bankruptcy Court, among other things, approving this Disclosure Statement and setting a hearing date for confirmation of the Plan deadline for objections thereto, and Proposed Notice of Disclosure Statement Approval; and

**Exhibit E:** Liquidation Analysis.

## II.    SUMMARY OF CLASSIFICATION AND
## TREATMENT OF CLAIMS AND INTERESTS IN THE PLAN

The estimated aggregate amount of claims in each class, and the estimated amount and nature of consideration to be distributed to each class, is summarized in the table below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims of the Office of the United States Trustee, Administrative Expense Claims and Priority Tax Claims have not been classified.  The Plan Proponent's estimate for recoveries by Holders of Allowed Claims is based on the results of (i) the Auction (as described further below), (ii) available Cash as of the Distribution Date, if any, and (iii) is further based on, among other things, the Plan Proponent's current view of the likely amount of Allowed Claims, including Allowed Administrative Expense Claims incurred by the Debtor through confirmation of the Plan and the costs of administering and winding down the Debtor's Estate and its commitment under the Plan for a 100% recovery to creditors.  There can be no guaranty that the Plan Proponent's estimates will prove to be accurate but as this Disclosure Statement describes a 100%, the Plan Proponent asserts that <u>all unclassified and classified claims will be paid in full based on the facts known to the Plan Proponent as of the date hereof</u>.

The estimated amount of Claims shown in the table below are based upon the Plan Proponent's review of the Debtor's Schedules, review of publicly available records including the record of open real estate taxes as set forth in Exhibit B and water and sewer charges, and the proofs of claim filed in the Debtor's case as of the date hereof.   The amount designated in the table below as "Estimated Range of Recovery" for each Class is the percentage based on the estimated Cash available to be distributed to Holders of Allowed Claims in each Class, divided by the estimated aggregate amount of Allowed Claims in each Class.  For a discussion of the various factors that could materially affect the amount of Cash to be distributed under the Plan, *see* Sections IV.D.2, E, and VII.C.1(a) herein.  For purposes of computations of Claim amounts, unclassified claims such as United States Trustee Claims, Priority Tax Claims, and Administrative Expense Claims and other expenses, the Effective Date is assumed to occur in July of 2024 with a sale to occur in August or September 2024.

### III.    SUMMARY OF CLASSIFICATION AND TREATMENT UNDER THE PLAN

| CLASS | TREATMENT | ESTIMATED AGGREGATE AMOUNT OF ALLOWED CLAIMS OR INTERESTS | ESTIMATED RANGE OF RECOVERY (Low-High) |
|---|---|---|---|
| **Unclassified**<br><br>(U.S. Trustee Claims, Administrative Claims, Priority Tax Claims) | **Non-voting/ unclassified:** The claims in this category are unclassified and do not vote on the Plan.  These claims consist of U.S. Trustee fees, administrative expenses of the estate including legal fees of retained professionals and priority tax claims.  The Plan Proponent estimates that the Claims in this category will total in the aggregate approximately $229,746.23 as of the date hereof but will likely be higher as of the Effective Date, which figure includes U.S. Trustee fees of approximately$35,000 (which is estimated through a Closing since that's when the bulk of these fees will accrue), open post-Filing Date New York City real estate taxes as of Closing in the amount of $26,897.64, open post-Filing Date sewer and water claims in the amount of $2,500, professional fees of $20,000 for Debtor's counsel, $25,000 on account of the Allowed 31st Funding 503(b) Claim, and likely utility bills of several thousand dollars.  All of these claims will be paid in full by 31st Funding, from available Cash and from Causes of Action, if any, if 31st Funding is the Successful Bidder at the Auction.  They will be paid from the Sales Proceeds, available Cash, and proceeds of Causes of Action (if any) if a Cash bidder prevails at the Auction.  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  The Plan Proponent is not aware of any Causes of Action to be pursued. | $259,143.87 | 100% |
| **Class 1**<br><br>(Priority Claims) | **Unimpaired, Non-Voting:** There were no other non-tax Priority Claims scheduled by the Debtor in the Schedules and none have been filed as of the date hereof.  To the extent such Claims exist and become Allowed Claims, they shall be paid in full from the Sale Proceeds (whether 31st Funding is the Successful Bidder or is outbid), plus available Cash, plus recoveries from Causes of Action.  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  The Plan Proponent does not believe there are any Priority Claims.  The Plan Proponent is not aware of any Causes of Action. | $0 | 100% |
| **Class 2**<br><br><br>(31st Funding Secured Claim) | **Unimpaired, Non-Voting:**  Class 2 consists of the Allowed 31st Funding Secured Claim in the prepetition amount of $776,529.41 as of the Filing Date, plus post-petition interest of approximately $83,205.00 as of June 30, 2024 and updated through the date of payment of the Allowed 31st Funding Secured Claim, plus advances, plus postpetition legal fees in the | $872,018 as of the June 30, 2024, plus post-petition interest from July 1, 2024 plus post-petition | 100% |

| | | | |
|---|---|---|---|
| | amount of approximately $12,283.59 as of March 21, 2024, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of approximately $872,018.  31st Funding intends to file a substantial contribution motion with the Court for all legal fees and expenses, plus an estimate of legal fees and expenses it expects through closing of the case, it seeks pursuant to section 503(b) of the Bankruptcy Code within thirty (30) calendar days of the Confirmation Date.<br><br>In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its bid, which shall consist of a credit bd in the amount of its secured claim (approximately $872,018) plus a cash component sufficient to pay all claims in full on the Distribution Dates (approximately $390,652.98)[1] with interest as required under the Plan.  If 31st Funding prevails on its Opening Bid, 31st Funding shall take title to the Property subject to any valid leases therein in full satisfaction of its pre- and postpetition claims against the Debtor and the Debtor's estate.  In that case, 31st Funding shall pay in full, in Cash, on the Distribution Date, all Allowed Unclassified and Classified Claims Against the Debtor and pay $10.00 to the Class 6 equity interest.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, the Allowed 31st Funding Secured Claim shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  This is a highly unlikely scenario since 31st Funding's Opening Bid specifically contemplates enough Cash to pay all claims in full and any higher bid will only yield an additional distribution to the Class 6 Interest holder. | interest in an amount to be determined as of the date of payment, plus advances, plus postpetition legal fees , all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code, but does not include an estimated $25,000 Administrative Expense Claim asserted pursuant to a properly filed substantial contribution motion pursuant to section 503(b) of the Bankruptcy Code. | |
| **Class 3**<br><br>(NYC Dept of Finance Secured Claim) | **Unimpaired, Non-Voting:**  Class 3 consists of the Allowed NYC Dept of Finance Secured Claim in the prepetition amount of $97,894.54 as of the Filing Date, plus post-petition interest in an amount to be determined as of the date of payment of the Allowed NYC Dept of Finance Secured Claim, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of at least $97,894.54.<br><br>      In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid (defined below), 31st Funding shall pay the Allowed NYC Dept of Finance Claim in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, the Allowed NYC Dept of Finance Claim shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  This is a highly unlikely scenario since 31st Funding's Opening Bid specifically contemplates enough Cash to pay all claims in full and any higher bid will only yield an additional distribution to the Class | $97,894.54, plus allowed interest, if any. | 100% |

---

[1] This figure also includes an additional $5,000 for potential interest claims by any creditors as allowed by the Plan.

| | | | |
|---|---|---|---|
| | 5 Interest holder. | | |
| **Class 4**<br><br>(NYC Water Board) | **Unimpaired, Non-Voting:**  Class 4 consists of the Allowed NYC Water Board Secured Claim in the prepetition amount of $13,690.42.42 as of the Filing Date, plus post-petition interest in an amount to be determined as of the date of payment of the Allowed NYC Water Board Secured Claim, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of at least 13,690.42.<br><br>    In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid (defined below), 31st Funding shall pay the Allowed NYC Water Board Secured Claim in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, the Allowed NYC Water Board Secured Claim shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  This is a highly unlikely scenario since 31st Funding's Opening Bid specifically contemplates enough Cash to pay all claims in full and any higher bid will only yield an additional distribution to the Class 6 Interest holder. | $13,690.42 plus allowed interest, if any. | 100% |
| **Class 5**<br><br>(General Unsecured Claims) | **Unimpaired, Non-Voting:**  Class 5 consists of all Allowed General Unsecured Claims.  The General Unsecured Claims filed against the Debtor or scheduled by the Debtor in the Schedules include, as of the Filing Date:  (a) a $3,785.02 general unsecured claim asserted by the NYS Dept of Taxation and Finance as part of Claim No. 1; (b) a $1,535.02 general unsecured claim asserted by the NYS Dept of Taxation and Finance as part of Claim No. 2 (which may be duplicative of Claim No. 1 and will be reviewed by the Plan Proponent and/or Plan Administrator before such claim is paid); (c) a $17,353.76 general unsecured claim asserted by Con Edison as part of Claim No. 3; and (d) a $5,850.77 claim asserted by the Internal Revenue Service as part of Claim No. 5, for a total unsecured class of claims of $28,524.57 (without taking into account the possibility of a duplicative claim) plus interest at the Federal Judgment Rate.<br><br>    In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid, 31st Funding shall pay all the Allowed General Unsecured Claims in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, then the Allowed General Unsecured Claims shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  This is a highly unlikely scenario since 31st Funding's Opening Bid specifically contemplates enough Cash to pay all claims in full and any higher bid will only yield | $28,524.57 plus interest at the Federal Judgment Rate, currently at 5.01 % | 100% |

| | | | |
|---|---|---|---|
| | an additional distribution to the Class 6 Interest holder. | | |
| **Class 6**<br><br>(Interests) | **Unimpaired, Non-Voting:** Class 6 consists of Allowed Interests in the Debtor. In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its bid, 31st Funding shall pay the Class 6 interest holder the sum of $10.00. In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, then the Class 6 interest holder shall receive all of the Sales Proceeds remaining after all Allowed unclassified and classified claims have been paid in full. | All Sales Proceeds above claims against the Debtor. | 100% |

As described more fully below and in the Liquidation Analysis annexed hereto at **Exhibit E**, the actual value of the Property is not known at this time but will be determined at the Auction. Plan Proponent believes the value of the Property should be at least $1,500,000 (interest in the Property during current marketing efforts was at least this much) which is substantially more than the $1,276,271,.40 in aggregate of all claims asserted against the Debtor asserted as of the date hereof including all of the unclassified claims (including taking into account post-Filing Date legal fees and any fees sought pursuant to section 503(b) of the Bankruptcy Code). The $1,276,271.40 figure constitutes 31st Funding's opening bid ("Opening Bid"), which is comprised of an $872,018 credit bid ("Credit Bid") and a $404,253,40 cash bid ("31st Funding Cash Bid" and collectively defined above as the Opening Bid. **The Plan and Confirmation Order will provide that, under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.** To the extent that any portion of 31st Funding's claim is disallowed, 31st Funding shall make up in Cash that disallowed portion of its Credit Bid to maintain the level of the Opening Bid so it is sufficient to pay all claims in full with interest. The Plan proposes to let the market establish the actual value of the Property through the marketing and Auction sale. As set forth in the Liquidation Analysis, the Plan Proponent believes that recoveries for creditors under this Plan would exceed the Distributions, if any, in a conversion and liquidation under Chapter 7 or a dismissal of this Case.

## IV. VOTING AND CONFIRMATION OF PLAN

### A. Acceptance of Plan

As a condition to confirmation, section 1129(a) of the Bankruptcy Code requires that: (a) each impaired class of claims or interests votes to accept the plan; and (b) the plan meets the other requirements of section 1129(a). Classes that are unimpaired are deemed to have accepted a plan and, therefore, are not entitled to vote and classes that do not receive or retain any property under a plan are deemed to have rejected a plan and are likewise not entitled to vote. Under this Plan, no class of claims is impaired and therefore all classes of claims are deemed to accept the Plan and are not entitled to vote. Accordingly, acceptances of the Plan will not be solicited and there will be no voting or balloting.

### B. Statutory Voting Procedures and Requirements

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms of a plan of liquidation or reorganization, and who receive Distributions under such plan, are entitled to vote to accept or reject the plan. Generally, a class is "impaired" under a chapter 11 plan unless such plan leaves unaltered the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest. Classes of claims and interests that are not impaired are not entitled to vote on the plan and are conclusively presumed to have accepted the plan.

As set forth above, the allowed amounts of all unclassified claims and all classes of claims are being paid in full under the Plan. Accordingly, no ballots will be sent to claimholders because all claimholders are deemed to accept the Plan because they are being paid in full.

C.  Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after proper notice to parties in interest, to hold a hearing on whether a plan proponent has fulfilled the confirmation requirements of section 1129 of the Bankruptcy Code. The Confirmation Hearing with respect to the Plan has been scheduled for _____ __, 2024 at 10:00 a.m. (Eastern time) before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800. The Confirmation Hearing may be conducted telephonically and may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to confirmation must be made in writing and must specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the Claim or Interest held by the objecting party. Any such objections must be filed and served upon the persons designated in the notice of the Confirmation Hearing and in the manner and by the deadline described therein.

At confirmation, Plan Proponent intends to seek entry of a Confirmation Order that confirms the Plan, vests all property of the Debtor in the Plan Administrator for the purposes of consummating the terms of the Plan, and approves the Auction Sale Procedures and authorizes, without further order of the Court, the auction, sale, and the transfer of the Property to the Successful Bidder or Back-up Bidder from a public auction, in either case free and clear of all liens, claims and encumbrances and with all of the protections of Section 1146 of the Bankruptcy Code concerning transfer taxes. Except to the extent that the Holder of a particular Claim or Interest has agreed to a different treatment of its Claim, the Plan provides: (a) that U.S. Trustee Claims, Allowed Administrative Expense Claims and Allowed Priority Tax Claims will be paid in full in Cash from the proceeds of the sale of the Property or, if 31st Funding is the Successful Bidder based on its Opening Bid and therefore there are no surplus proceeds, available Cash or recoveries from Causes of Action, then by 31st Funding, and (b) all other Claims will be paid as set forth in the Plan from available Cash, the Sales Proceeds, and/or Causes of Action. If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall. This is a highly unlikely scenario since 31st Funding's Opening Bid specifically contemplates enough Cash to pay all claims in full and any higher bid will only yield an additional distribution to the Class 6 Interest holder.

All U.S. Trustee Fees payable under section 1930 of Title 28, together with any interest thereon pursuant to 31 U.S.C. 3717, as determined by the Bankruptcy Court at the Confirmation Hearing either have been paid or the Plan provides for the payment of all such fees on the Effective Date from any Sales Proceeds, available Cash, or Causes of Action or, if 31st Funding is the Successful Bidder based on the Opening Bid

then the U.S. Trustee Fees will be paid by 31st Funding from the 31st Funding Cash Bid. The Plan further provides for the payment of all U.S. Trustee Fees accruing from and after the Effective Date.

The Debtor did not schedule and is not believed to have any Retiree Benefits (as defined in section 1114 of the Bankruptcy Code).

The Plan Proponent believes that the Plan otherwise satisfies, to the extent applicable, all of the statutory requirements of Chapter 11 of the Bankruptcy Code. Certain of these requirements are discussed in more detail below.

D.    Confirmation Requirements

1.    Feasibility

In connection with confirmation of the Plan, section 1129(a)(11) requires that the Bankruptcy Court find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This is the so-called "feasibility" test. Here, the Plan contemplates an orderly liquidation of the Debtor's assets and distribution of all of the proceeds thereof to Creditors holding Allowed Claims pursuant to the Auction and provisions of the Plan. Accordingly, confirmation of the Plan will not be followed by a liquidation or further reorganization. Plan Proponent, therefore, believes that the Plan complies with the standard of section 1129(a)(11) of the Bankruptcy Code. The Plan, as a liquidating plan, does not provide for a discharge of the Debtor.

2.    "Best Interests"; Liquidation Analysis

In order to confirm the Plan, the Bankruptcy Court also must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not accept the Plan as required under the Bankruptcy Code, the "best interests" test requires that the Bankruptcy Court find that it provides to each member of such Impaired Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the Distribution that each such member would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of Claims or Interests would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the aggregate dollar amount that would be available if the Chapter 11 Case was converted to a Chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a Chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of the Debtor would consist of the net proceeds received from the disposition by a Chapter 7 trustee (as opposed to a disposition under this Plan) of the Debtor's Property and other assets plus any cash or recovery from Causes of Action held by the Debtor.

The Liquidation Value available to Holders of Claims or Interests that are not Secured Claims would be reduced by, among other things: (a) the Claims of Secured Creditors to the extent of the value of their collateral and the likelihood that such secured Claims would increase significantly in amount while a chapter 7 trustee prepared for liquidation of the Property; (b) the costs, fees, commissions, and expenses of Chapter 7 liquidation, as well as other administrative expenses of the Debtor's Chapter 7 Case; (c) unpaid and accruing

Administrative Expense Claims of the Chapter 11 Case; and (d) Priority Claims (if any) and Priority Tax Claims, which would likely increase in amount with the passage of time after the appointment of a chapter 7 trustee (d) a likely lesser value received for the Property as a result of the taint of a Chapter 7 liquidation rather than through an orderly sale in Chapter 11, and most importantly (e) the lack of a backstopping creditor as 31st Funding is here dedicated to ensure full payment to creditors even if there are insufficient Sales Proceeds, available Cash or Causes of Action to pay Claims. The Debtor's costs of liquidation in Chapter 7 Case would include the statutory commissions or compensation of the trustee, as well as legal fees of a trustee's counsel to familiarize herself with the Case, and those of other professionals retained by such trustee, asset disposition expenses, litigation costs, Claims arising from the prolonged administration of the Debtor during the pendency of the Chapter 7 Case and all unpaid Administrative Claims incurred by the Debtor during the Chapter 11 Case that are allowed in the Chapter 7 Case.

The information contained in **Exhibit E** hereto provides a summary of the Liquidation Value of the Debtor's interests in property, assuming a Chapter 7 liquidation in which the trustee appointed by the Bankruptcy Court would liquidate the Debtor's properties and interests. In sum, Plan Proponent believes that Chapter 7 liquidation would result in diminution in the value to be realized by Holders of Allowed Claims, as compared to the proposed Distributions under the Plan as a result of the additional layer of administrative costs attendant with appointment of a Chapter 7 Trustee and professionals therefor. The Plan Proponent believes that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a Chapter 7 liquidation of the Debtor.

3. Cramdown

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan if all other requirements under section 1129(a) of the Bankruptcy Code are satisfied, and if, with respect to each Impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to such Class. Confirmation under section 1129(b) of the Bankruptcy Code requires that at least one Impaired Class of Claims accepts the Plan, excluding any acceptance of the Plan by an "insider" (as that term is defined in section 101 of the Bankruptcy Code). The Plan pays the allowed amounts of all claims in full. Therefore, confirmation pursuant to section 1129(b) does not apply.

E. Alternatives to Confirmation and Consummation of the Plan

If the Plan is not confirmed, the Debtor's Chapter 11 Case would most likely be (i) converted to a liquidating case under a Chapter 7 trustee's supervision or (ii) dismissed. If the Case is dismissed, 31st Funding would immediately proceed with the state court foreclosure process based on the final Foreclosure Judgment. While that would be pending, its interest in the asserted amount of approximately $161.25/day would continue to accrue as would interest accruing from the Class 3 Claim of the NYC Dept of Finance and such accruals would substantially diminish or eliminate completely the equity in the property that could be available to the equity holder Mr. Moulinos and, with passage of enough time, would eventually decrease a return to other claimholders, especially if the Property continues to deteriorate. If the case is converted to chapter 7, there would be substantial additional expenses including chapter 7 fees and chapter 7 legal fees. A sale in chapter 7 would also likely bring a lower sale price due to the taint purportedly associated with chapter 7 liquidations. The Plan Proponent believes that under either alternative, conversion to chapter 7 or dismissal, Distributions to unsecured creditors, if any, would necessarily be reduced or eliminated from those realized

under the Plan.

Under the Plan, all Unclassified Claim, Allowed Administrative Expense Claims and Allowed Priority Claims are guaranteed to be paid in full from the Sales Proceeds, available Cash, and recoveries on Causes of Action (if any). These recoveries are assured under the Plan, even if no one outbids 31 Funding at the auction sale.

Further, if the value of the Property exceeds the amount of the Allowed Administrative Expense Claims, the Allowed 31st Funding Secured Claim plus the Allowed 31st Funding 503(b) Claim, and all of the priority tax, other secured, and general unsecured claims, then the excess will flow to Mr. Moulinos as the 100% equity owner, all without diminishment due to foreclosure expenses or Chapter 7 expenses, including trustee's statutory commissions and professional and legal fees.

Consequently, Plan Proponent believes that the Plan will provide a much greater ultimate return to Holders of Allowed Claims than would a Chapter 7 liquidation of the Debtor or a dismissal.

## V. <u>BACKGROUND</u>

On the Filing Date, the Debtor filed with the Bankruptcy Court under penalty of perjury a corporate chapter 11 petition seeking bankruptcy protection (the "<u>Petition</u>"). The Petition was accompanied by a sworn list of creditors, which list included names of five creditors or notice parties including 31st Funding. Over a period of approximately 12 weeks after the Filing Date, the Debtor filed required documents with the Bankruptcy Court setting forth background information about the Debtor. A copy of such filings are attached hereto as and made part of **Exhibit B**. The Debtor is an active New York corporation with its principal place of business at 23-52 31st Street, Astoria, New York, NY 11105. The principal asset of the Debtor is that certain mixed use real property located at 23-52 31st Street, Astoria, New York, NY 11105 [Block: 842, Lot: 28] (defined herein as the "Property"). The disposition of the Property is the primary source of recovery for creditors in this case. The Debtor owns all of the right, title and interest in and to the Property subject to valid liens against the Property. The Property has four residential units of which (i) two are both occupied and paying rent, (ii) one is occupied and not paying rent (and is in eviction proceedings and is due to vacate by April 30, 2024) and (iii) one is vacant. The Debtor's principal, Andrew Moulinos operates his law practice out of the ground floor commercial unit and does not pay rent. The two paying tenants each pay $1,950/month for a total income for the Property of $3,900/month. As of the end of February 2024, the Debtor had $33,968.18 in cash on deposit in the Debtor's bank account at TD Bank, which cash is comprised substantially if not exclusively from rent collections. The Debtor's disclosure of cash on hand as of the end of March is not due until April 20, 2024.

31st Funding holds a final judgment of foreclosure and sale (the "<u>Foreclosure Judgment</u>") based on a defaulted note, recorded first mortgage, assignment of leases and rents, and personal default by the Debtor's principal as guarantor under the note. The recorded first mortgage is a first priority lien on the Properties. The Debtor scheduled the collective value of the Property at $2,600,000. The Property is occupied, in part, with one or more residential tenants. The auction of the Property contemplated herein is AS-IS, WHERE-IS, and subject to all valid tenancies.

The recorded mortgage held by 31st Funding LLC (defined herein as 31st Funding), remains outstanding, and has been in default since May 1, 2018, and is subject to state court foreclosure proceedings that were commenced in New York State Supreme Court for Queens County under Index No. 706660/2019

(the "Foreclosure Action"). The Foreclosure Action resulted in entry of the Foreclosure Judgment against the Property, the Debtor and Mr. Moulinos on or about July 1, 2022. The Foreclosure Action remains stayed by this chapter 11 case. The Foreclosure Judgment results in an amount due as of the Filing Date of $776,529.41 as set forth in Claim No. 4 in this case, and accrues interest at the New York State statutory judgment rate of 9.0% per annum or at the rate or $161.25 per day. As of June 30, 2024 (516 days after the Filing Date during the pendency of this case, 31st Funding asserts that more than $83,205 in interest has or will have accrued. Pursuant to section 506(b) of the Bankruptcy Code, there shall be allowed postpetition interest and legal fees, to the extent allowed in the underlying documents, on oversecured claims like the claim asserted by 31st Funding. As of March 21, 2024 and excluding services related to the preparation of the Plan, Disclosure Statement and associated filings, 31st Funding has expended $12,283.59 in legal fees during the pendency of this case. 31st Funding intends to assert its rights to payment of legal pursuant to section 506(b) of the Bankruptcy Code. The Debtor commenced this Bankruptcy Case to stay further state court proceedings including a foreclosure sale based on the Foreclosure Judgment. It is the Plan Proponent's belief that the Property is substantially occupied and with monthly rent collections as reflected in Exhibit C hereto.

On January 31, 2023 (the "Filing Date") the Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor has continued in its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. Since the Filing Date, the Property has been occupied and the Plan Proponent believes it to be productive and generates monthly revenue in the amounts and with the expenses set forth in Exhibit C hereto, which are all of the Debtor's monthly operating reports filed as of the date hereof. The monthly operating reports are due on the 20th of the month for the prior month. To the best of the Plan Proponent's knowledge, the Debtor is a holding company with no other business operations and no employees.

As of the Filing Date, 31st Funding asserted a fully secured claim in the amount of $776,529.41 based on the Foreclosure Judgment, defaulted note and first mortgage lien. As a fully secured claim and pursuant to the underlying note and mortgage, 31st Funding asserts that, pursuant to Section 506(b) of the Bankruptcy Code, 31st Funding's Claim continues to accrue interest, legal fees and expenses. As of June 30, 2024, 31st Funding estimates that approximately $872,018 in interest and legal fees (as of March 21, 2024, plus legal fees and costs in the amount of approximately $25,000 estimated through confirmation unrelated to the Plan. 31st Funding intends to assert in its capacity as Plan Proponent, a claim pursuant to section 503(b) of the Bankruptcy Code based on a substantial contribution to this case, which motion will filed and served be on notice to case parties, and subject to allowance by the Bankruptcy Court). Thus, 31st Funding asserts total Claims in the amount of approximately $25,000 as of June 30, 2024. 31st Funding has agreed to bid its claim in the amount of $872,018 plus cash in an amount sufficient to pay all claims in full in this case, which as discussed in greater detail below, would be in the amount of up to the amount of approximately $1,276,271.40 as of June 30, 2024 (defined above as "Opening Bid") and such amount would be updated to reflect the actual amount needed to pay all claims in full on the Distribution Date. To the extent any portion of this Opening Bid amount is disallowed, 31st Funding will make up that disallowed portion in cash as part of its Opening Bid at an auction. 31st Funding shall not be entitled to a break-up fee on its Opening Bid. **The Plan and Confirmation Order will provide that, under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.**

# VI. **THE CHAPTER 11 CASE**

Since the Filing Date, the Debtor has continued to operate as debtor-in-possession subject to the supervision of the Bankruptcy Court.  An immediate effect of the commencement of the Chapter 11 Case was the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoined the commencement or continuation of all collection efforts by creditors, the enforcement of liens against the Debtor and any litigation against the Debtor.  This injunction remains in effect, unless modified or vacated by order of the Bankruptcy Court, until the Plan is confirmed and the Conditions to the Effective Date are satisfied.

A.    Significant Chapter 11 Events

1.    Schedules and Statements of Financial Affairs.  Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 require a debtor to prepare and file schedules and statements of financial affairs in connection with the commencement of a Chapter 11 Case.  On the Filing Date, the Debtor filed its voluntary chapter 11 petition, a creditor list, schedules A/B, D, E/F, G, H, the Summary of Assets and Liabilities, Statement of Financial Affairs ("SOFA"), Twenty Largest Creditors List, Attorney Compensation Disclosure, and Verification of Creditor Matrix certifying that the five creditors listed on the creditor matrix was a true and correct list of same (collectively ("Petition and Schedules")[ECF No. 1].[2]  The Law Offices of Andrew Moulinos filed the case on behalf of the Debtor.  Mr. Moulinos, as set forth below, is the 100% equity owner of the Debtor.  As further set forth below, Mr. Moulinos did not continue as counsel to the Debtor and was ultimately replaced by Rosalyn Maldonado P.C. and her law office has continued to represent the Debtor since Mr. Moulinos's replacement in this matter.  On February 6, 2023, Mr. Moulinos executed and filed with the Court a Rule 1007 Affidavit on behalf of the Debtor [ECF No. 10].  On February 6, 2023, Mr. Moulinos executed and filed with the Court a corporate ownership statement and list of equity security holders showing himself to be the 100% owner of the Debtor ECF Nos. 12, 13].  On May 1, 2023, Ms. Maldonado, having replaced Mr. Moulinos as Debtor's counsel, filed an amended Schedules A/B and amended SOFA [ECF Nos. 19, 23].  The  Petition and Schedules, corporate ownership and equityholder's disclosure and amended pleadings are all attached hereto as **Exhibit B**.

Retention of Counsel, Bar Date and Creditor Meeting:  In February 2023, the United States Trustee advised Mr. Moulinos that he could not both represent the Debtor and be its principal and witness at the creditor meeting conducted pursuant to Bankruptcy Rule 341.  On March 2, 2023, Mr. Moulinos fied a consent to change attorney[ECF No. 16].  Rosalyn Maldonado P.C. appeared for the Debtor as its bankruptcy counsel [ECF No. 17].  On April 21, 2023, the U.S. Trustee examined Mr. Moulinos as representative of the Debtor under oath pursuant to Bankruptcy Rule 341.  On May 19, 2023, Rosalyn Maldonado P.C. filed her application  to  be  retained  as  Debtor's  counsel[ECF No. 29].  On May 19, 2023, the Debtor filed its applications to establish a bar date to establish a filing deadline for all Claims against the Debtor.  On July 6, 2023, the Debtor filed an amended bar date motion [ECF No. 36].  On July 7, 2023, the Court entered an order establishing a bar date deadline for all entities to file Claims against the Debtor [ECF No. 37].  On July 18, 2023, the Court entered an order approving the retention of Rosalyn Maldonado P.C. as Debtor's counsel

---

[2] All references to "ECF No. __" are references to documents filed with the United States Bankruptcy Court for the Eastern District of New York and which can be reviewed either with an online access account set up with "PACER" (see below) or in person at the computer terminals located in the courthouse, which is located at the Clerk's Office at United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800.  'PACER' refers to the Public Access to Court Electronic Records website that is maintained by the federal government.  For more information, please see https://pacer.uscourts.gov.

[ECF No. 38]. On August 17, 2023, the Debtor filed an second amended bar date motion [ECF No. 39]. On September 13, 2023, the Court entered an amended bar date order establishing October 18, 2023 at the final date for all parties to file claims against the Debtor and Ms. Maldonado served same [ECF. No. 45]. 31st Funding further served the bar date order on numerous case and notice parties [ECF No. 63].

        <u>Monthly Operating Reports</u>: As of April 10, 2024, the Debtor has filed 13 monthly operating reports for all months from the Filing Date with the exception of April 2023, which appears to have never been filed [ECF Nos. 20-22, 24-26, 32-33, 40-41, 46, 52, 55-56, 58, 60-61].

        <u>Retention of Real Estate Broker and Marketing of Property</u>: On September 20, 2023, the Debtor filed an application to retain Franco Medina of Urban Utopia Realty LLC as real estate broker in this case to market the Property for sale for 180 months, which 180-day period ended on March 10, 2024 or if counted from the date the retention order was entered (see below), the 180-day period ended on April 29, 2024 [ECF Nos. 47-50]. On November 1, 2023, the Court entered an order approving the Urban Utopia retention effective as of September 12, 2023 [ECF No. 53], which suggests that the Urban Utopia exclusive right to sell has already terminated. As of the date hereof, such retention has not been renewed or extended. During the retention period, the retained broker showed the Property to a number of people. It was initially listed for $2,600,000 and the listing price was dropped to $2,300,000. As of the date hereof, no buyer has signed a contract with the Debtor for the Property at the listing price or at any price. On or about March 15, 2024, 31st Funding consented to the Debtor's request to utilize up to $10,000 to make repairs to the Property in furtherance of the sale effort. Urban Utopia also stated it would revise its marketing plan and focus on "starting to market to professionals, lawyers, accountants and doctors to seek out non investor purchasers". As of the date hereof, it is unclear if the broker's marketing efforts are continuing, if there has been any success with the new marketing strategy, if the repairs were ever completed, or if any firm offers were made for the Property. What is known as of the date hereof is that no sale motion to approve a sale or establish auction procedures has been filed with the Court.

        As of the date hereof, eight proofs of claim have been filed against the Debtor, including the Claim of 31st Funding as discussed above. The Schedules reflect no other creditors except those who have filed claims. A copy of the chapter 11 petition and associated documents, the 1007 Affidavit, the Debtor's Schedules are attached hereto as **Exhibit B** [ECF Nos. 1, 10, 12, 13, 19, 23]. All of the Debtor's operating reports filed to-date are attached hereto as **Exhibit C** [ECF Nos. 20-22, 24-26, 32-33, 40-41, 46, 52, 55-56, 58, 60-61], which set forth the Debtor's income and expenses and Claimholders are referred to such reports for information on the Debtor's income and expenses. All parties are encouraged to review all of the attachments to this Disclosure Statement as part of their evaluation of the Plan.

        2.     <u>Bar Date</u>. As noted above, on September 13, 2023, the Debtor obtained an order establishing October 18, 2023 as the final date for creditors to file proofs of claim in the Debtor's case. Accordingly, the claim pool is known at this point.

        3.     <u>Retention of Professionals.</u> The Law Firm of Rosalyn Maldonado P.C. appeared on behalf of the Debtor. On May 19, 2023, Ms. Maldonado filed her application for his retention as counsel to the Debtor. On July 18, 2023, the Court entered an order [ECF No. 38] retaining such law firm.

        4.     <u>Other Motions.</u> As of the date hereof, apart from the counsel and broker retention applications discussed above, the Debtor has not filed any other motions or applications in the Bankruptcy Case. On August 17, 2023, the Debtor, the United States Trustee, and 31st Funding stipulated to lift the automatic stay to permit the Debtor to pursue eviction proceedings against the Debtor's one nonpaying tenant, which stipulation was so-ordered by the Court on October 16, 2023 [ECF No. 51]. As of the date hereof, the

Debtor has not filed a plan or disclosure statement. The Debtor does not make any monthly payments of adequate protection to 31st Funding. The Debtor has not retained an accountant and has not filed a motion to obtain financing to address the debt to 31st Funding the accrual of interest. Section 363 of the Bankruptcy Code prohibits the use of cash collateral, i.e., the rents from the Property, without the consent of the secured party, 31st Funding. 31st Funding never expressly consented to the use of cash collateral (other than of the $10,000 for repairs discussed herein) nor did it object to the Debtor's failure to pay adequate protection. That said, the Debtor's use of cash collateral has been minimal and appears to have been for the benefit of the Property and therefore not a matter of concern for 31st Funding at this time and 31st Funding appears to be adequately protected by the Debtor's equity cushion.

## VII. <u>SUMMARY OF THE PLAN</u>

The following is an overview of certain material provisions of the Plan. The following summaries of the material provisions of the Plan do not purport to be complete and are qualified in their entirety by reference to all the provisions of the Plan, all exhibits, all documents described therein, and the definitions therein of certain terms used below. Terms used herein but not defined herein shall have the meaning ascribed to them in the Plan.

A.     The Effective Date of the Plan is the date that is fourteen days after the Confirmation Order is entered by the Bankruptcy Court, or, if such date is not a Business Day, the next succeeding Business Day, unless such Confirmation Order is stayed by Order of the Bankruptcy Court or other Court exercising jurisdiction over this Bankruptcy Case, and all Conditions Precedent to the Effective Date have been satisfied or waived.

B.     <u>General Information Concerning Treatment of Claims and Interests</u>

1.     <u>United States Trustee Claims, Administrative Expense Claims and Priority Tax Claims</u>

Pursuant to the Plan, Holders of Claims of the Office of the United States Trustee, Allowed Administrative Expense Claims and Allowed Priority Tax Claims (set forth in Articles II and III of the Plan) have not been classified and are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code.

2.     <u>Classes of Claims and Interests</u>

Classes 1, 2, 3, 4, 5 and 6, to the extent such Classes have at least one valid Claims or Interest, are Unimpaired and are not entitled to vote on the Plan. Plan Proponent does not intend to solicit acceptances of the Plan from Holders of such Claims.

Plan Proponent intends to seek confirmation of the Plan and to take all steps necessary to cause the Effective Date and Distribution Date to occur as soon as practicable. There can be no assurance, however, as to when the Distribution Date will actually occur. Procedures for the Distribution of Cash pursuant to the Plan, including matters that are expected to affect the timing of the receipt of Distributions by Holders of Allowed Claims in certain Classes and that could affect the amount of Distributions ultimately received by such Holders, are described more fully in Section G below, entitled "PROVISIONS COVERING DISTRIBUTIONS".

C. <u>Classification and Treatment of Claims and Interests</u>

Section 1123 of the Bankruptcy Code requires that, for purposes of treatment and voting, a Chapter 11 plan divide the different claims against, and interests in a debtor into separate classes based upon their legal nature. In accordance with section 1123 of the Bankruptcy Code, claims of a substantially similar legal nature are usually classified together, as are shareholder interests which give rise to the same legal rights; the "claims" and "interests" themselves, rather than their holders, are classified.

Under a Chapter 11 plan, the separate classes of claims and interests must be designated either as "impaired" or "unimpaired" by the plan. If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan (unless the plan provides for no distribution to the holders, in which case, the holder is deemed to reject the plan), and the right to receive under the Chapter 11 plan property of a value that is not less than the value the holder would receive if the debtor were liquidated under Chapter 7.

1. <u>Unclassified Claims</u>

The Bankruptcy Code does not require classification of certain priority claims against a debtor. In this Chapter 11 Case, these unclassified claims include Administrative Expense Claims, among others. All Distributions referred to below that are scheduled for the Distribution Date will be made on the Distribution Date or as soon as practicable thereafter, unless otherwise agreed to in writing by the Holders of any unclassified claims.

(a) <u>United States Trustee Claims, Administrative Expense Claims and Priority Tax Claims:</u> Claims of the Office of the United States Trustee, which arise under 28 U.S.C. § 1930, together with any interest thereon pursuant to 31 U.S.C. 3717, to the extent not paid in the normal course during this Chapter 11 case, will be paid from the Sales Proceeds from the sale of the Property, from available Cash, and from the prosecution of Causes of Action, if any, on the Distribution Date. The Plan Proponent does not believe there are any Causes of Action to be pursued.

Administrative Expense Claims are the actual and necessary costs and expenses incurred in connection with the Chapter 11 Case that are allowed under section 503(b) of the Bankruptcy Code. These expenses typically may include post-petition amounts owed to vendors providing goods and services to a debtor during the Chapter 11 case, and other obligations incurred after the filing date, including the actual, reasonable fees and expenses incurred during the Chapter 11 Case of the Debtor's Professionals. Plan Proponent believes the Administrative Expense Claims of Professionals include only the fees and expenses of (i) Plan Proponent counsel, Ravert PLLC, which fees are subject to Court approval pursuant to a properly filed substantial contribution motion, and which are expected to be approximately $25,000 and will be asserted as part of the 31st Funding 503(b) Claim, (ii) Debtor's bankruptcy counsel, Rosalyn Maldonado, P.C. for services rendered to the Debtor and its Estate during the Chapter 11 Case, which fees are subject to Court approval, provided however that Plan Proponent reserves the right to object to any fee request that exceeds the $20,000 in Debtor's counsel fees; and (iii) the reasonable expenses of the Plan Administrator under the Plan. All Allowed Administrative Expense Claims, to the extent not paid in the normal course during this Chapter 11 case, will be paid from the Sales Proceeds from the sale of the Property, from available Cash, and from the prosecution of Causes of Action, if any, on the Distribution Date. If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall. The Broker's fee on a sale would be paid by the Successful Bidder as a buyer's premium, which would not directly reduce the Sales Proceeds received by the Post-Confirmation Estate. For

the avoidance of doubt, 31st Funding's secured claim includes a claim for post-petition interest and legal fees, which are not 503(b) legal fee claims, and/or protective advances pursuant to section 506(b) of the Bankruptcy Code. 31st Funding intends to file a substantial contribution motion pursuant to section 503(b) of the Bankruptcy Code or otherwise for its contributions to this case and such substantial contribution claim would be subject to court approval and is treated for the purposes of the Plan as an Allowed Administrative Expense Claim to the extent Allowed and is to be paid in accordance with its respective Administrative Expense Claim treatment.

Allowed Priority Tax Claims to the extent not paid in the normal course during this Chapter 11 case, will be paid from the Sales Proceeds from the sale of the Property, from available Cash, and from the prosecution of Causes of Action, if any, on the Distribution Date.

The Plan Proponent estimates that the above-mentioned unclassified Claims will total approximately $259,143.87 as of the Filing Date but could be substantially higher as of the Effective Date depending upon interest and penalty accrual rates for the tax claims and the timing of the Effective Date. This estimated figure includes U.S. Trustee fees of approximately $35,000 (which is estimated through a Closing since that's when the bulk of these fees will accrue), $26,897.64 in post-petition New York City real estate tax claims as of Closing, $2,500 in water and sewer charges for the post-petition period, an additional $5,000 in interest and penalties on priority tax and secured tax claims, $20,000 in professional fees for Debtor's counsel, and $25,000 on account of the Allowed 31st Funding 503(b) Claim.

All payments to Professionals for compensation and reimbursement of expenses will be made in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules relating to the payment of interim and final compensation and expenses. The Bankruptcy Court will review and determine all such requests, after notice to creditors and a hearing wherein the Debtor and other parties-in-interest may participate, and if appropriate, object to the allowance thereof.

At this time, there has been no disclosure of potential Chapter 11 Administrative Expenses of the Debtor's professionals. However, the Plan provides that on or before thirty (30) calendar days after the Confirmation Date, each professional retained in the Chapter 11 Case shall file and serve an application for final allowance of such professional's Administrative Expense Claim through the Confirmation Date to (a) the Plan Proponent's counsel, Ravert PLLC, 16 Madison Square West, FL 12, #269, New York, NY 10010, Attn: Gary O. Ravert, Esq; and (b) the United States Trustee for the Eastern District of New York, Office of the United States Trustee for the Eastern District of New York, One Bowling Green, New York, New York 10004, Attn: Nazar Khodorovsky, Esq.. The Court will establish a final date by which all final applications Administrative Expense Claims and substantial contribution motions must be filed but absent a separate order of the Bankruptcy Court, the Plan currently provides that all such Claims must be asserted no later than thirty (30) days after the Confirmation Date.

Each Administrative Expense Claim Claimant who seeks allowance of an Administrative Expense Claim (a) that is not incurred in the ordinary course of the Debtor's business, (ordinary course claims should have been paid in the ordinary course during this Chapter 11 Case), (b) that is not allowed by a Final Order, and that fails to timely and duly file its application for allowance of its Administrative Expense Claim, or (c) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall NOT be treated as a creditor with respect to such claim for the purposes of receiving any Distribution in connection with such Administrative Expense Claim. Except as otherwise specified in the Plan

or a Final Order of the Bankruptcy Court, the Allowed Amount of an Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date.

    2.    <u>Classified Claims and Interests</u>

    (a)    **<u>Class 1- Allowed Priority Claims</u>** - Class 1 consists of the Allowed Priority Claims that are not tax claims.  There were no non-tax Priority Claims scheduled by the Debtor in the Schedules and as of the Bar Date, none have been filed.  To the extent such Claims are filed and become Allowed Claims, they shall be paid in full from the Sales Proceeds from the sale of the Property, from available Cash, and from the prosecution of Causes of Action, if any, on the Distribution Date.  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  The Plan Proponent does not believe there are or will be any other Priority Claims.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Unclassified Claims and Claims in Classes 1, 2, 3, 4, 5 and 6.  The holder of any Priority Claim, to the extent it is an Allowed Claim, shall be entitled to payment in full.

    Full Settlement - The treatment and consideration to be received by Allowed Priority Claims shall be, subject to the terms hereof, in full settlement and final satisfaction of such Claims against the Debtor.

    Class 1 is Unimpaired under the Plan and is not entitled to vote.

    (b)    **<u>Class  2  –  Allowed 31st Funding Secured  Claim</u>** – Class 2 consists of the Allowed 31st Funding Secured Claim in the prepetition amount of $776,529.41 as of the Filing Date, plus post-petition interest of approximately $83,205 as of June 30, 2024 (516 days since the Filing Date), plus advances, plus postpetition legal fees in the amount of approximately $12,283.59 as of March 21, 2024, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of approximately $872,018.  31st Funding intends to file a substantial contribution motion with the Court for all legal fees and expenses, plus an estimate of legal fees and expenses it expects through closing of the case, it seeks pursuant to section 503(b) of the Bankruptcy Code within thirty (30) calendar days of the Confirmation Date.

    In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its bid, which shall consist of a credit bd in the amount of its secured claim (approximately $872,018) plus cash sufficient to pay all claims in full on the Distribution Dates (approximately $390,562.98) that would be needed to pay all creditors in full.  If 31st Funding prevails on its Opening Bid, 31st Funding shall take title to the Property subject to any valid leases therein in full satisfaction of its pre- and postpetition claims against the Debtor and the Debtor's estate.  In that case, 31st Funding shall pay in full, in Cash, on the Distribution Date, all Allowed Unclassified and Classified Claims Against the Debtor and pay $10.00 to the Class 6 equity interest.  If 31st Funding is outbid, then the Allowed 31st Funding Secured Claim shall be paid in full from the Sales Proceeds, available Cash, and proceeds from Causes of Action, if any.

    After the Confirmation Date, only the Debtor and the Office of the United States Trustee may file an objection to the 31st Funding Secured Claim, which objection shall be filed with the Court no later than 5:00 PM, thirty (30) calendar days after the Confirmation Date.  In the event that there is no timely objection to 31st Funding's Secured Claim and/or Allowed 31st Funding 503(b) Claim, and if 31st Funding is not the Successful Bidder, then 31st Funding shall be paid in Cash from the Sales Proceeds at the Closing the prepetition amount of $776,529.41, plus post-petition amounts due to 31st Funding pursuant to section

506(b) of the Bankruptcy Code, for an approximate amount of $872,018 as of June 30, 2024 with legal fees (as allowed) from March 21, 2024 through Closing, plus all amounts allowed as part of the Allowed 31st Funding 503(b) Claim.  If there is a timely objection, then funds in an amount equal to the Disputed Amount shall be placed in the Disputed Claim Reserve to be held by Plan Administrator's attorney, Ravert PLLC, in its attorney escrow account and shall only be distributed in accordance with Article X of the Plan.

Full Settlement - The treatment and consideration to be received by 31st Funding shall be, subject to the terms of the Plan, in full settlement and final satisfaction of all of its Claims against the Debtor and this estate.

Class 2 is Unimpaired under the Plan and is not entitled to vote.

(c)    **Class 3 – Allowed NYC Dept of Finance Secured  Claim** –  Class 3 consists of the Allowed 31st Funding Secured Claim in the prepetition amount of $97,894.54 as of the Filing Date, plus post-petition interest in an amount to be determined as of the Closing, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of at least $97,894.54.

In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid, 31st Funding shall pay the Allowed NYC Dept of Finance Claim in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, the Allowed NYC Dept of Finance Claim shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.

Full Settlement - The treatment and consideration to be received by NYC Dept of Finance shall be, subject to the terms of the Plan, in full settlement and final satisfaction of all of its Class 3 secured claim against the Debtor and this estate but shall not impair its rights to payment under any other classified or unclassified claims including but not limited to NYC Dept of Finance priority tax claims or general unsecured claims (if any).

Class 3 is Unimpaired under the Plan and is not entitled to vote.

(d)    **Class 4 – Allowed NYC Water Board Secured  Claim** –  Class 4 consists of the Allowed NYC Water Board Secured Claim in the prepetition amount of $13,690.42.42 as of the Filing Date, plus post-petition interest in an amount to be determined as of the Closing, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of at least 13,690.42.

In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid (defined below), 31st Funding shall pay the Allowed NYC Water Board Secured Claim in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, the Allowed NYC Water Board Secured Claim shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  This is a highly unlikely scenario since 31st Funding's Opening Bid specifically contemplates enough Cash to pay all claims in full and any higher bid will only yield an additional distribution to the Class 6 Interest holder.

Full Settlement - The treatment and consideration to be received by NYC Water Board shall be, subject to the terms of the Plan, in full settlement and final satisfaction of all of its Class 4 secured claim against the Debtor and this estate but shall not impair its rights to payment under any other classified or unclassified claims including but not limited to NYC Water Board postpetition claims or general unsecured claims (if any).

(e)    Class 4 is Unimpaired under the Plan and is not entitled to vote.

(f)    **Class 5 – General Unsecured Claims** -   Class 5 consists of all Allowed General Unsecured Claims.  The General Unsecured Claims filed against the Debtor or scheduled by the Debtor in the Schedules include, as of the Filing Date:  (a) a $3,785.02 general unsecured claim asserted by the NYS Dept of Taxation and Finance as part of Claim No. 1; (b) a $1,535.02 general unsecured claim asserted by the NYS Dept of Taxation and Finance as part of Claim No. 2 (which may be duplicative of Claim No. 1 and will be reviewed by the Plan Proponent and/or Plan Administrator before such claim is paid); (c) a $17,353.76 general unsecured claim asserted by Con Edison as part of Claim No. 3; and (d) a $5,850.77 claim asserted by the Internal Revenue Service as part of Claim No. 5, for a total unsecured class of claims of $28,524.57 (without taking into account the possibility of a duplicative claim).

In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid, 31st Funding shall pay all the Allowed General Unsecured Claims in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, then the Allowed General Unsecured Claims shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.

Full Settlement - The treatment and consideration to be received by General Unsecured Claimholders, subject to the terms of the Plan, in full settlement and final satisfaction of all of its Class 5 general unsecured claims against the Debtor and this estate but shall not impair its rights to payment they may have under any other classified or unclassified claims .

Class 5 is Unimpaired under the Plan and is not entitled to vote.

(g)    **Class 6 – Interests** - Class 6 consists of Allowed Interests in the Debtor.  In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its bid, 31st Funding shall pay the Class 6 interest holder the sum of $10.00.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, then the Class 6 interest holder shall receive all of the Sales Proceeds remaining after all Allowed unclassified and classified claims have been paid in full.

Full Settlement - The treatment and consideration to be received by Holders of Allowed Interests in Class 6 shall be, subject to the terms hereof, in full settlement and final satisfaction of their respective Interests to the extent of the Distributions provided for herein on account of such Interests.

Class 6 is an Unimpaired under the Plan and is not entitled to vote.

D.   Sources of Cash To Make Plan Distributions

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for Debtor to make Distributions and payments required under the Plan to Holders of Allowed Claims will be paid by the Plan Administrator from the proceeds of the Auction and sale of the Property defined in the Plan as the 'Sales Proceeds', and from the available Cash proceeds from the Property, and/or from recoveries from Causes of Action as required.

E.   Unexpired Leases and Executory Contracts

1.     Generally.   Under section 365 of the Bankruptcy Code, the Debtor has the right, subject to Bankruptcy Court approval, to assume or reject executory contracts or unexpired leases. If an executory

contract or unexpired lease entered into before the Filing Date is rejected by the Debtor prior to entry of the Confirmation Order, it will be treated as if the Debtor breached such contract or lease on the date immediately preceding the Filing Date, and the other party to the agreement may assert a General Unsecured Claim for damages incurred as a result of the rejection.

2.      Assumption and Rejection.      The Plan provides in Article VIII that as of the Effective Date, any valid executory contract or unexpired lease, that has not been expressly assumed or rejected with approval by order of the Bankruptcy Court, shall be deemed to have been assumed and assigned (defined in the Plan as the Assumed Tenant Leases) and shall be transferred as part of the sale unless (a) there is then pending before the Bankruptcy Court a motion to reject such unexpired lease or executory contract, or (b) the Bankruptcy Court has entered an order extending the period during which a motion may be made to reject such unexpired lease or executory contract, and such a motion is filed with the Bankruptcy Court before the expiration of such period.  All Assumed Tenant Leases will be deemed to be assumed and assigned to the Successful Bidder or Back-up Bidder, as the case may be, as of the date of the Closing.  The Disclosure Statement and the Plan shall constitute due and sufficient notice of the intention to assume all executory contracts and unexpired leases except for any that are not rejected or pending rejection.  The Confirmation Order shall be deemed an order under section 365(a) of the Bankruptcy Code rejecting any such executory contracts and unexpired leases, if any, that are expressly rejected in the Plan.   The Confirmation Order will include provisions for the assumption and assignment of the Assumed Tenant Leases.

3.      **Bar Date for Rejection Damage Claims.  Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, the Confirmation Order shall provide that any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Plan must be filed with the Bankruptcy Court on or before 30 calendar days after entry of an order rejecting such executory contract or unexpired lease with a copy thereof upon (a) Plan Proponent's counsel, Ravert PLLC, 16 Madison Square West, FL 12, #269, New York, NY 10010, Attn: Gary O. Ravert; (b) counsel for the Debtor, Rosalyn Maldonado, P.C., 108 South Franklin Avenue, Ste 11, Valley Stream, NY , NY 11580; and (c) the United States Trustee for the Eastern District of New York, Office of the United States Trustee for the Eastern District of New York, One Bowling Green, New York, New York 10004, Attn: Nazar Khodorovsky, Esq.**

**Any Person or Entity that fails to file and serve its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, the Plan Administrator, the Post-Confirmation Estate or any Property or interests in Property of the Debtor, the Plan Administrator, or the Post-Confirmation Estate.  All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 5) under the Plan.**

F.      Means For Effectuating The Plan

1.      Auction Sale of the Property

(a)   The Plan is a liquidating plan that contemplates the orderly liquidation of all property of the Debtor's estate and as such, the Plan does not entitle the Debtor to a discharge.  All Claims against the Debtor are addressed in and are paid in whole pursuant the Plan.  The Plan is predicated upon the Bankruptcy Court entering the Confirmation Order, which, among other things, confirms the Plan and vests all property of the Estate in the Plan Administrator for the purposes of carrying out an Auction Sale of the Property and manage the Property until it is sold and the Sale closes, authorizes and approves the Auction Sale Procedures, and authorizes the Auction of the Property in accordance with the terms of the Plan and the Auction Sale

Procedures, which are attached as Exhibit A to the Plan, which procedures shall govern all aspects of the sale, authorizes the Closing of the Sale to successful purchaser or the Successful Bidder or Back-up Bidder, as appropriate, and authorizes the transfer of the Property to the successful purchaser or Successful Bidder or Back-up Bidder without further court order, fees and clear of all liens, claims, and encumbrances pursuant to section 1123(a)(5)(D) and grants the purchaser the benefit of section 1146 of the Bankruptcy Code with respect to transfer taxes.

(b)    As of the Effective Date, 31st Funding shall be the Plan Administrator. 31st Funding shall be permitted to retain counsel and has, as of the date hereof, selected Ravert PLLC as its counsel. Ravert PLLC has agreed to a fixed billing rate of $360/hour through Closing. Within three business days of the Effective Date, the Plan Administrator shall retain MYC & Associates ("MYC") or such other qualified real estate broker-auctioneer as its real estate broker and auctioneer as defined in the Plan as the Broker and, if the Plan Administrator chooses to do so, a separate property manager for the Property (or it may use MYC for property management if MYC agrees) so as to maintain, preserve, prepare such Property for marketing and Auction, and collect rents and enforce leases post-Effective Date. The Property shall be marketed for no less than 45 days after MYC or such other Broker is retained.

(c)    Unless otherwise provided herein, the Plan Administrator and the Broker shall, in accordance with the Auction Sale Procedures, market and auction the Property and proceed to Closing with the winning bidder. If no higher and better bid other than the Opening Bid is received, the Plan Administrator shall close on the sale of the Property to 31st Funding based on its Opening Bid. Any disputes concerning Qualified Bidders, Successful Bidders or Back-up Bidders will be resolved by the Bankruptcy Court.

(d)    31st Funding is deemed a Qualified Bidder and shall open the auction with an Opening Bid of up to $1,276,271.40, as adjusted for interest accrual from July 1, 2024 until the date of the Auction. Such amount is, in part, a credit bid and 31st Funding shall not be entitled to a break-up fee. To the extent the 31st Funding Secured Claim is disallowed in whole or in part, 31st Funding shall make up the disallowed portion of its Credit Bid in cash. If 31st Funding shall be the Successful Bidder or otherwise entitled to acquire the Property in accordance with the Auction Sale Procedures, it shall have the right to assign its successful Opening Bid and its right to close thereunder prior to or at the Closing. Any such assignee shall be entitled to all of the rights of 31st Funding under the Plan, including but not limited to the right to take title to the Property free and clear of any and all (i) Liens, Claims and encumbrances, (ii) Transfer Taxes, and (iii) any anti-assignment provisions under any assigned contracts or applicable law. 31st Funding shall then, as set forth in the Plan, pay all such Claims as required by the Plan. **The Plan and Confirmation Order will provide that, under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.**

(e)    If the Property is sold for Cash to a Cash bidder that outbids 31st Funding's Opening Bid, than the Plan Administrator shall close with such bidder and such bidder shall tender the full purchase price and pay the Broker's fee as set forth in the Auction Sale Procedures and it shall take title to the Property free and clear of any and all (i) Liens, Claims and encumbrances, (ii) Transfer Taxes, and (iii) any anti-assignment provisions under any assigned contracts or applicable law. The Sales Proceeds, plus available Cash, plus recoveries from Causes of Action, if any, shall be used to satisfy Claims as set forth in the Plan. If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.

(f)     The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, authorizing and directing the Plan Administrator (and/or Plan Proponent to the extent not performed by the Plan Administrator) to execute or deliver or to join in the execution or delivery of any and all instruments necessary to effectuate the transfer of the Property and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, and for Plan Proponent to be authorized and directed to do so in the event Plan Administrator fails or refuses to do so.

(f)     Pending the Closing of the sale of the Property, the Plan Administrator shall (i) be vested with all property of the Debtor's estate and shall be authorized and directed (either personally or through its designee, property manager and/or the Broker) to continue to maintain and preserve the Property in all respects and collect rents and enforce leases, and in accordance with the terms hereof; and (ii) take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan .

(g)     Notwithstanding anything contained herein or in the Auction Sale Procedures to the contrary, the Entity acquiring the Property shall assume and be fully responsible and liable, as appropriate, for evicting or otherwise removing any tenants, subtenants or other persons renting, using or occupying the Property, including any of their personalty, from and after the date of the Closing.

2.     Transfer Taxes.  The consummation of the Closing for the Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such sale, transfer and delivery of any and all instruments of transfer, without limitation, in connection therewith shall not be taxed under any Transfer Taxes, stamp tax, real estate transfer tax, mortgage recording tax or similar tax and to the extent permitted by §1146(a) of the Bankruptcy Code shall not be subject to any state, local, or federal law imposing sales tax.  Such exemption shall include any transfer of the Property and the 31st Funding Cash Collateral to 31st Funding or its designee or to the Successful Bidder if it is not 31st Funding.

3.     Transfer of Assets.  At the Closing for the Property, the successful purchaser, whether the Successful Bidder or the Back-up Bidder is 31st Funding or otherwise, shall receive (w) the transfer of a bargain and sale deed without covenants against grantor's acts to the Property and assignments of any leases in connection therewith, executed by the Plan Administrator for and on behalf of the Post-Confirmation Estate, the Debtor and its Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (x) together with any and all New York State and other governmental transfer tax returns; and (y) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the recording of the deed to reflect the Bankruptcy Code section 1146(a) exemption, and to effectuate the transfer of the Property. The Plan Administrator and Plan Proponent do not make any representations or warranties whatsoever in connection with the Property.  The Property is being sold pursuant to the Plan "AS IS", "WHERE IS" in its condition on the Closing Date without any representations, covenants, guarantees or warranties by the Plan Administrator or Plan Proponent of any kind or nature whatsoever, and free and clear of any Liens, claims or encumbrances of whatever kind or nature accrued through the date of the Auction (including, without limitation, any leases or use and occupancy agreements relating to the Property other than the Assumed Tenant Leases), with such Liens, claims, or encumbrances, if any, to attach to the proceeds of sale, and subject to any Liens, claims or encumbrances of whatever kind or nature thereafter accrued as of the date of the Auction.  Any such Liens, claims or encumbrances of whatever kind or nature accruing from and after the Closing shall be the responsibility of the Entity acquiring the Property at the Closing in accordance with

the terms of the Plan and Auction Sale Procedures.

4. <u>Cooperation of the Debtor's Principals.</u> The Debtor, Debtor's principal and the Debtor's authorized signatories shall, at all times, reasonably cooperate with the Plan Administrator and Plan Proponent or such other Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns in connection with the Auction, any Closing for the sale of any Property, and the administration of the Post-Confirmation Estate.

5. <u>Funding.</u> The funds needed to pay all U.S. Trustee Fees, Allowed Administrative Expense Claims, and Allowed Priority Tax Claims will be paid in accordance with the Plan by either 31st Funding if it is the Successful Bidder, plus available Cash and recoveries from Causes of Action, or if the Successful Bidder is a Cash bidder from the Sales Proceeds, from available Cash, and/or from the Causes of Action and other Property of the estate, in each case as set forth in the Plan. The Allowed 31st Funding Secured Claim (Class 2) will be paid at the Closing in accordance with the terms of the Plan, including the Auction Sale Procedures. For the avoidance of doubt, if 31st Funding is the Successful Bidder based on its Opening Bid, all claims against the Debtor including but not limited to the U.S. Trustee fees, Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall be paid in full by 31st Funding.

6. <u>Management of the Debtor.</u> On and after the Effective Date, the Post-Confirmation Estate including the Property will be managed and administered by the Plan Administrator and her designee property manager and/or Broker and the operations of the Debtor shall cease and the Debtor and its principal and signatories and representatives or agents shall have no further authority with respect to the Property or any property of this estate. The Plan Administrator and its professionals, including a property manager (if any) shall be compensated from the Post-Confirmation Estate at a rate of no more than $360 per hour. The Plan Administrator has agreed to retain Ravert PLLC as its bankruptcy counsel at a rate of $360 per hour, and may retain special litigation counsel at their customary rates if the need arises. Professionals retained by the Plan Administrator shall not be required to file a fee application. The payment of the fees and expenses of the Plan Administrator and the Plan Administrator's retained professionals shall be made from the Post-Confirmation Estate including but not limited to the Sales Proceeds, available Cash, and proceeds of Causes of Action. No payments may be made to the Plan Administrator or its professionals from the Post-Confirmation Estate unless a statement of such fees and expenses has been sent to the Office of the United States Trustee and at least ten (10) Business Days have passed without objection. Any objections that are not resolved shall be resolved by the Bankruptcy Court. Post-Effective Date, the Plan Administrator shall maintain the books and records for the Post-Confirmation Estate including revenue and expenditures of the Post-Confirmation Estate but shall not be required to file tax returns for the Debtor. The Debtor's principal shall bear the sole responsibility for the filing of the Debtor's tax returns for as long as applicable law requires such returns to be filed. The Plan Administrator's duties shall terminate upon the closing of this Bankruptcy Case.

7. <u>Execution of Documents.</u> The Plan Administrator and/or Plan Proponent shall execute, release and deliver, for and on behalf of the Post-Confirmation Debtor and its Estate, all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan, including without limitation, any documents required in connection with the Closing and the sale of the Property in accordance with the Plan.

8. <u>Filing of Documents</u>. Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the

Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including but not limited to accepting and recording of the Confirmation Order, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

9.      Transactions on Business Days.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

10.     Implementation.    Pursuant to the Confirmation Order and upon confirmation of the Plan, the Plan Administrator and/or Plan Proponent, as appropriate, shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and provisions of the Plan including but not limited to taking possession and control of the Properties, the Debtor's bank accounts, rental income or other proceeds of the Property, and prosecuting any Causes of Action of the estate.  Before the Effective Date, the Plan Proponent may, and on or after the Effective Date, the Plan Administrator may, file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.  Upon the completion of all acts required to be performed by the Plan Administrator under the Plan and/or the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for entry of the final decree), the Plan Administrator shall be relieved of its duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Administrator, the Post-Confirmation Estate, or payments to be made in connection therewith.  From and after the Effective Date, the Post-Confirmation Estate and the Plan Administrator shall not be required to file any document, or take any action, to withdraw the Post-Confirmation Debtor's business operation from any States where the Debtor previously conducted business operations.

11.     Preservation and Vesting of Claims, Rights, Demands and Causes of Action. Pursuant to section 1123 of the Bankruptcy Code, the Plan Administrator, shall be vested with, shall retain, and/or shall have the authority to prosecute and enforce any and all Causes of Action including Avoidance Actions, claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands and without limitation Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor, its Estate, the Post-Confirmation Debtor, the Plan Administrator and/or the Post-Confirmation Estate.  The Plan Administrator will also be authorized to challenge, object to and/or settle disputed Claims, without first having to seek approval from the Bankruptcy Court, in accordance with the terms and provisions hereof.  The Plan Administrator will be authorized and empowered to bind the Post-Confirmation Estate thereto.  Any settlement by the Plan Administrator for the benefit of the Post-Confirmation Estate, pursuant to and in accordance with the terms hereof shall be conclusively deemed to be in the best interests of the Post-Confirmation Estate.

12.     Recoveries.   All Cash, proceeds and/or recoveries from the Avoidance Actions and Causes of Action and all other proceeds derived from the Post-Confirmation Estate and liquidation of the Post-Confirmation Estate Assets will be included in the Post-confirmation Estate and administered and disbursed in accordance with the provisions of the Plan.

13.     Reporting Requirements.  The Plan Administrator shall prepare and maintain

Distribution schedules with respect to all Classes of Claims.  When all objections to all Claims have been resolved by a Final Order or otherwise in accordance with the terms of the Plan, and all Post-Confirmation Estate Assets have been converted to Cash or abandoned, the Plan Administrator shall compute the final distribution to all Claimants and Interest holders and distribute the Cash on the Distribution Date. Approximately ninety (90) days following the Effective Date, the Plan Administrator shall file with the Bankruptcy Court and serve on the U.S. Trustee and those parties who have requested special notice Post-Confirmation, a status report and a summary financial update explaining what progress has been made toward entry of the Final Decree, including a statement of all disbursements made pursuant to the Plan along with an estimated date when an application for a Final Decree will be filed with the Bankruptcy Court. Until entry of the Final Decree, if any further assets exist for liquidation and have not been abandoned, or if there are further Distributions to be made, then further status reports including a statement of all disbursements made pursuant to the Plan shall be filed periodically approximately every ninety (90) days and served on the same entities.  Each status report shall generally include a description of Post-Confirmation Estate Assets sold or otherwise realized upon during the relevant period, gross and net proceeds received, Distributions and payments made, expenses incurred and paid, and cash on hand.  A standard Post-Confirmation Operating Report as required by the U.S. Trustee shall meet the requirements of this status report.  Although as of the Effective Date the Debtor's operations shall cease, to the extent that the Debtor has independent reporting requirements Post-Confirmation such reporting requirements shall be unaffected by this Plan.  To the extent that Post-Confirmation reports are due based on the operations of the Post-Confirmation Estate, the Plan Administrator shall be solely responsible for the filing of such reports.

      14.    <u>Post-Confirmation Debtor.</u> Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor.  The Debtor may dissolve after, and only after, the entry of a Final Decree if it so desires. The Debtor's principal shall be responsible for preparing or causing to be prepared all local, state, or federal tax returns and/or filings that are necessary or appropriate. Neither the Plan Administrator, nor the Plan Proponent, nor 31st Funding shall have any responsibilities of any type to the Debtor or the Post-Confirmation Debtor.  As this is a liquidating Plan, the Debtor shall not be entitled to any discharge.

      15.    <u>Prosecution of Objections to Claims;  Amendment of Schedules.</u>  The Plan Administrator from and after the Effective Date reserves the right and shall to have the sole authority, subsequent to the Effective Date but prior to the case being closed, to object to any Claim or request for allowance of an Administrative Expense Claim, whether included on the Debtor's Schedules or reflected in a proof of claim filed with the Bankruptcy Court, and to initiate contested matters and to initiate such proceedings as may be necessary and appropriate in the Bankruptcy Court for a determination of the Allowed Amount of any and all Claims or requests for allowance of Administrative Expense Claims in accordance with the terms hereof, <u>provided however</u>, the Debtor and the Office of the United States Trustee shall retain the right to object to the 31st Funding Secured Claim, provided however that such objection shall be filed with the Court no later than 5:00 PM, thirty calendar days after Confirmation Date.  The Debtor and the Office of the United States Trustee shall retain the right to object to the 31st Funding 503(b) Claim, provided however that such objection shall be filed with the Court no later than 5:00 PM, thirty calendar days after Administrative Bar Date.  The rights of the Debtor and the Office of the United States Trustee to object to (i) any Administrative Expense Claim or (ii) any claim asserted by 31st Funding, whether in its own capacity or its capacity as Plan Administrator, shall be preserved provided however that any such objections must be timely asserted as set forth herein.

G.   Provisions Covering Distributions

1.      Post-Confirmation Estate.  Except as otherwise provided in the Plan, on the Effective Date all of the Property of the estate, including the real property, and any other Property of the Debtor without limitation shall vest in the Plan Administrator pending the Closing, at which Closing a bargain and sale deed without covenants against grantor's acts to the Property and any leases in connection therewith shall be transferred to the acquiring Entity.  From time to time thereafter, other assets may be transferred to the Plan Administrator on behalf of the Post-Confirmation Estate and, upon conversion thereof to Cash, will be deposited into the Plan Administrator's Distribution account and distributed to Holders of Allowed Claims and Interests in accordance with the terms and provisions of the Plan.

2.      Timing of Distributions Due Under Plan.  All Distributions and payments required under the Plan to Holders of Allowed Claims and Interests will be paid from the Post-Confirmation Estate on the Distribution Date in the manner indicated in the Plan.  Subject to the terms of the Plan, the distributions on Allowed Claims and Interests will take place on the Distribution Date, which follows the Closing.

3.      Manner of Distributions.  At the option of the Plan Administrator Distributions from the Post-Confirmation Estate may be made by wire transfer, check, or such other method as the Plan Administrator deems appropriate under the circumstances.  No Distributions shall be required to be made to any Holder of an Allowed Claim in an amount less than five ($5.00) dollars, unless request is made, in writing, to the Plan Administrator.

4.      Cash Payments.  Cash payments made pursuant to the Plan will be in U.S. dollars and paid by check or electronic transfer.  Cash payments made pursuant to the Plan in the form of checks issued by the Plan Administrator shall be void if not cashed within one hundred twenty (120) days of the date of the issuance.  Requests for reissuance of any check shall be made directly to Plan Administrator as set forth in Section 10.8 of the Plan.

5.   Disputed Claims Reserve.

a)      Contemporaneously with the Closing on the Property, or as soon thereafter as the Plan Administrator shall determine, the Plan Administrator shall establish the Disputed Claims Reserve.  For purposes of establishing the Disputed Claims Reserve, the Plan Administrator shall reserve for each Disputed Claim at the maximum amount at which each such Claim may be allowed and paid given the funds available.  On the Distribution Date, the Plan Administrator shall deposit into the Disputed Claims Reserve Cash in an amount equal to the amount that would be distributable to all Holders of Disputed Claims in respect of all Distributions made on that date if such Disputed Claims were Allowed, provided however, that the maximum amount to be reserved will be limited to the funds available as set forth in the Plan.  The reserve for any Dispute over a Claim held by 31st Funding shall be held by the Plan Proponent's counsel, Ravert PLLC, in its IOLTA account pending Allowance.  The Plan Administrator shall maintain the Disputed Claims Reserve in a segregated, interest bearing account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim.

b)      In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim shall never exceed the maximum amount allocated to such claim in the Disputed Claims Reserve and the Plan Administrator shall distribute to the Holder of such Allowed Claim from the

28

Disputed Claims Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Distribution Date.

c)    To the extent funds in the Disputed Claims Reserve become available to other Claims because such funds are no longer reserved for a Claim that was Allowed in a lesser amount, such funds may be allocated to other Claims or Interest holder as set forth in the Plan.

6.    <u>Payment of Statutory Fees.</u>  All fees payable pursuant to 28 U.S.C. § 1930, together with any interest thereon pursuant to 31 U.S.C. 3717, as determined by the Bankruptcy Court as of the Confirmation Date, to the extent not previously paid by the Debtor, shall be paid by the Plan Administrator from the operating income of the Post-Confirmation Estate pending the Closing on the Sale of the Property and, upon the Closing, from the proceeds of the Sale, available Cash and/or other estate assets.  If 31st Funding is the Successful Bidder based on its Opening Bid, the statutory fees pursuant to 28 U.S.C. §1930, together with any interest thereon pursuant to 31 U.S.C. 3717, shall be paid in full by 31st Funding.  After the Effective Date, all fees pursuant to 28 U.S.C. § 1930, together with any interest thereon pursuant to 31 U.S.C. 3717, shall be paid by the Plan Administrator until the earlier of the entry of the Final Decree or an order of conversion or dismissal.  If for any reason, 31st Funding is not the Successful Bidder and is outbid at the Auction and there is nonetheless a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.

7.    <u>Interest on General Unsecured Claims.</u>  Holders of Allowed General Unsecured Claims under Class 5 of the Plan shall only receive interest in the amount of the Federal Judgment Rate on any Distribution to which such Holder would be entitled hereunder, if and only if, there are sufficient funds for Distribution that would otherwise go to Class 6 Interests.

8.    <u>Withholding of Taxes.</u>

a)    The Plan Administrator may withhold from any Cash or property to be distributed under the Plan any amount which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Plan Administrator may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification or documentation as may be deemed necessary to comply with applicable tax reporting and withholding laws.

b) Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

9.    <u>Undeliverable or Unclaimed Distributions.</u>

a)    All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Schedules or in the Claims Register in this Case unless the Plan Administrator has been notified in writing after the Effective Date of a change of address. Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Plan

Administrator for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Plan Administrator to reissue such check, and (ii) provides the Plan Administrator with such documentation as the Plan Administrator requests to verify in her/his sole discretion that such Entity is entitled to such check. If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution provided for in such check. Any such forfeited Distributions shall revert to the Plan Administrator on behalf of the Post-Confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

b)  In the event that any Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distributions will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address. All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Plan Administrator and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary. Upon such forfeiture of Cash or other Post- Confirmation Estate property, such Cash or Post-Confirmation Estate Assets shall be the property of the Post-Confirmation Estate and the Post-Confirmation Estate and the Plan Administrator shall have no further obligation to such Holder.

10.  <u>Post-Effective Date Services by Professionals.</u>  The Professionals retained by the Debtor shall continue to be retained subsequent to the Effective Date, subject to the direction of the Plan Administrator, for the purpose of rendering services as necessary to consummate the Plan as the Plan Administrator deems necessary.

The reasonable fees and expenses of the Plan Administrator and his/her Professionals incurred after the Confirmation Date shall constitute Operating Expenses of the Post-Confirmation Estate and shall be payable from available Cash upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Plan Administrator, with a copy to the Office of the United States Trustee. The Plan Administrator and U.S. Trustee shall have ten (10) Business Days from the receipt of any such fee and expense statements to dispute all or part of such statement. Upon the expiration of said ten (10) Business Days, provided there are sufficient funds available in the Post-Confirmation Estate, the Plan Administrator or Estate or its manager shall pay the Professionals the undisputed portion of such fees and expenses. Any disputes shall be submitted to the Bankruptcy Court for determination.

H.  <u>Procedures For Resolving Disputed Claims</u>

1.  <u>Objections to Claims.</u>  From and after the Effective Date except as otherwise provided in the Plan, only the Plan Administrator shall have the authority to file or litigate to judgment objections to any Claims. Subject to an order of the Bankruptcy Court providing otherwise, the Plan Administrator may object to a Claim by filing an objection with the Bankruptcy Court and serving such objection upon the Holder of such Claim not later thirty (30) days after the Effective Date or thirty (30) days after the filing of the proof of such Claim, whichever is later, or such other date fixed by the Bankruptcy Court.

2.      Procedure.  Unless otherwise ordered by the Bankruptcy Court, or agreed to by written stipulation of the Plan Administrator, or until such objection is withdrawn, only the Plan Administrator may litigate the merits of each Disputed Claim until a Final Order is entered with respect to such Claim.

3.      Payments and Distributions With Respect to Disputed Claims.  No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim.

4.      Claims Reserve - Estimation.  For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to Holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Effective Date, or such later date as may be established by the Bankruptcy Court and/or the Debtor, pursuant to section 502 of the Bankruptcy Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which event the amount so fixed will be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent or unliquidated amount that such Claim ultimately may be Allowed under the Plan, if such Claim is Allowed in whole or in part. The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims from the Post-Confirmation Estate, regardless of the amount finally Allowed on account of such Disputed Claims, and except as expressly provided for in the Plan no Holder shall have recourse against the Plan Administrator, the Post-Confirmation Estate, the Plan Proponent, the Debtor, 31st Funding or any of their respective Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their respective property, as such Holder's sole recovery shall be from the Distributions to be made to Holders of Allowed Claims (subject to any claims that any Holder may have against any guarantors).

5.      Distributions After Allowance of Disputed Claims.  Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan.

6.      Distributions After Disallowance of Disputed Claims.  Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such Holder's Claim, may receive subsequent Distributions if and to the extent that other Claims are disallowed or expunged or as Post-Confirmation Estate Assets are sold and converted to Cash.  Such subsequent Distributions will be included with the next Distributions due to be paid to Holders of Allowed Claims pursuant to and in accordance with Article V of the Plan.

7.      Setoffs and Recoupments.  Except with respect to Avoidance Actions, and Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Plan Administrator or its designee, as the case may be, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off or recoup against any Allowed Claim, the Distributions to be made pursuant to the Plan on account of such Claim, any Avoidance Actions or Causes of Action of any nature that the Plan Administrator, Debtor, the Post-Confirmation Estate, or the Debtor's successors may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Plan Administrator, the Post-Confirmation Debtor or the Post-Confirmation Estate, or their successors, of any Avoidance Action or Cause of Action that the Plan Administrator, the Plan Administrator on behalf of the Debtor and/or the Post-Confirmation Debtor, the Post-Confirmation Estate, or their successors may possess against such Holder.

I.      Effect of Consummation of The Plan

The Plan provides for the Auction of the Property owned by the Debtor and Distributions of the Post-Confirmation Estate in accordance with the terms and provisions of the Plan. Pursuant to the Plan, the Plan Administrator is charged with administering the Post-Confirmation Estate in the most reasonably cost-effective manner possible in the shortest reasonable time, with due regard for litigation risks and the risk that undue haste may reduce the liquidation proceeds of any portion of the Post-Confirmation Estate. In selling or otherwise monetizing the Post-Confirmation Estate the Plan Administrator shall use commercially reasonable efforts to maximize the amount of the net proceeds derived therefrom.

As set forth in Article V of the Plan, Holders in each Class will receive payment in full of they claims from the Cash deposited into the Post-Confirmation Estate and the earnings thereon though payment of same is subordinate to all payments requested to be made to Holders of U.S. Trustee Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims and Allowed Priority Claims. U.S. Trustee Claims, Allowed Administrative Expense Claims and Allowed Priority Tax Claims all of which will in any event be paid in full as provided for under Articles II and III of the Plan.

J.   Injunction, Release and Exculpation

1. **Injunction.**

**On and after the Effective Date, each Holder of a Claim against or an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Plan Administrator or the Plan Proponent from implementing the Plan or the Confirmation Order.**

2. **Exculpation. Neither the Plan Proponent nor any of their respective officers, directors, members, employees or other agents, financial advisors, attorneys, and accountants shall have any liability to any Holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct, gross negligence, fraud and/or criminal conduct as finally determined by a Final Order of the Bankruptcy Court. Neither the Plan Proponent nor the Plan Proponent shall be liable for a debt of the Debtor, the Debtor's Estate or the Post-Confirmation Estate (as appropriate) solely as a result of its role as Plan Proponent or Plan Administrator.**

K.   Conditions Precedent To Confirmation Order And Effective Date Of The Plan

1.   Condition Precedent to Entry of the Confirmation Order. The following condition must be satisfied on or before the Confirmation Date: The Confirmation Order must be in form and substance reasonably acceptable to the Plan Administrator and Plan Proponent.

2.   Conditions Precedent to the Effective Date. The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective: The Effective Date is the date that is fourteen days after the Confirmation Order is entered by the Bankruptcy Court, or, if such date is not a Business Day, the next succeeding Business Day, unless such Confirmation Order is stayed

by Order of the Bankruptcy Court or other Court exercising jurisdiction over this Bankruptcy Case, and all Conditions Precedent to the Effective Date have been satisfied or waived.

       3.    <u>Condition Precedent to Consummation.</u> Upon the Auction and Closing having occurred, the Plan shall be deemed substantially consummated.

       If the Plan has not been consummated in accordance with the terms hereof within one hundred eighty (180) days of the Confirmation Date, or such longer period as may be agreed by the Plan Administrator, the Plan Administrator shall file with the Bankruptcy Court and serve a notice indicating an inability to consummate the Plan and the Bankruptcy Court shall thereafter schedule a hearing to consider the just disposition of the Chapter 11 case.

       L.    <u>Miscellaneous Provisions</u>

       1.    <u>Bankruptcy Court to Retain Jurisdiction.</u>  Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, or the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, without limitation, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

       a.  To consider any modification of the Plan under Bankruptcy Code section 1127 and/or modification of the Plan before "substantial consummation" thereof as defined in the Bankruptcy Code;

       b.  To hear and determine all controversies, suits, and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

       c.  To hear and determine all controversies, suits, and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor or the Plan Proponent or any other party or party in interest, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

       d.  To hear and determine all rights or Avoidance Actions or Causes of Action which may exist on behalf of the estate;

       e.  To hear and determine all applications for allowance of compensation and expense reimbursement of Professionals for periods prior to the Effective Date;

       f.  To hear and determine any and all applications, motions, adversary proceedings, contested matters or litigated matters;

       g.To hear and determine any disputes concerning tenancy, possessory rights, leases and/or any dispute concerning the Property that might otherwise be litigated in landlord tenant court outside of this Bankruptcy Case and this Court shall retain jurisdiction to enter an order of eviction and to authorize the U.S. Marshall to carry out orders of eviction or orders to vacate;

       h.  To enter a final decree closing this Chapter 11 Case;

       i. To hear and determine any application (a) by the Plan Administrator to resign or (b) by any other party to remove the Plan Administrator for cause; and

       j.  To the extent not set forth above, to hear and determine any and all disputes, matters, proceedings, or controversies arising under or in connection with the Plan to aid in the administration or consummation of the Plan.

       2.    <u>Binding Effect of the Plan.</u>  Nothing contained in the Plan or the Disclosure

Statement will limit the effect of confirmation as set forth in Bankruptcy Code §1141. The provisions of the Plan shall be binding upon and inure to the benefit of the Plan Administrator on behalf of the Post-Confirmation Debtor, the Post-Confirmation Estate, any Holder of a Claim or Interest, and/or their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity affected by the Plan.

       3.    <u>Fractional Cents.</u> Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

       4.    <u>Successors and Assigns.</u> The rights and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

       5.    <u>Blank Ballots.</u> Not ApplicableAny Ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall not be counted a vote for numerosity and claim amount or any purpose. Any Ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

       6.    <u>Authorization of Corporate Action.</u> Upon the entry of the Confirmation Order, all actions contemplated by the Plan will be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the transfer and/or contribution of the Post-Confirmation Estate assets. On the Confirmation Date, appropriate members or authorized signatories of the Plan Administrator, the Debtor, the Post-Confirmation Debtor and/or the Plan Proponent are authorized and directed to execute and to deliver any and all agreements, documents and instruments contemplated by the Plan, the Post-Confirmation Estate and/or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without the need for any additional authorizations, approvals or consents.

       7.    <u>Withdrawal of the Plan.</u> The Plan Proponent reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan. If the Plan Proponent revokes or withdraws the Plan, or if the Confirmation Date does not occur, or if the Effective Date does not occur then (a) the Plan will be deemed null and void and (b) the Plan shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed (but which shall not impair 31st Funding's right to seek a substantial contribution claim), in such event, the rights of any Holder of a Claim or Interest shall not be affected nor shall such Holder be bound by, for purposes of illustration only, and without limitation, (i) the Plan, (ii) any statement, admission, commitment, valuation or representation contained in the Plan, the Disclosure Statement, or the Related Documents or (iii) the classification and proposed treatment (including any allowance) of any Claims in this Plan.

       8.    <u>Captions.</u> Article and Section captions used in the Plan are for convenience only and will not affect the construction of the Plan.

       9.    <u>Method of Notice.</u> Any notice or other communication hereunder shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended (or, in the case of notice by facsimile transmission or e-mail, when received and

telephonically or electronically confirmed), addressed as follows (provided, however, that only one notice or other communication hereunder need be sent to Holders sharing the same address):

**If to the Plan Proponent and/or Plan Administrator:**

31ˢᵗ Funding LLC
c/o Ravert PLLC
16 Madison Square West, FL12, #269
New York, New York 10010
Attn.: Gary O. Ravert, Esq.
Email: gravert@ravertpllc.com
*Attorneys for 31ˢᵗ Street Funding, the Plan Proponent*

**If to the Debtor:**

Rosalyn Maldonado P.C.
108 S. Franklin Avenue, Ste 11
Valley Stream, New York 11580
Email: rmaldonado@rosalynmaldonadopc.com
*Attorneys for Majostan Corp.*

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court.

10.    <u>Amendments and Modifications to Plan.</u>    With the written consent of the Plan Proponent, the Plan may be altered, amended or modified by the Plan Proponent, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code provided the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

11.    <u>Section 1125(e) of the Bankruptcy Code</u>.  Confirmation of the Plan will constitute a finding that the Plan Proponent has proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

12.    <u>Entire Agreement.</u>    The Plan, as described herein, and the Disclosure Statement and exhibits thereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed to by the parties in writing.

13.    <u>Post-Confirmation Obligations.</u>    Under current applicable law, the Plan Administrator, for and on behalf of the Post-Confirmation Estate, is required to pay fees assessed against Debtor's Estate under U.S.C. § 1930(a)(6), together with any interest thereon pursuant to 31 U.S.C. 3717, until entry of an order closing the Chapter 11 Case.  Subject to a change in applicable law, the Plan Administrator shall pay all fees assessed against the Estate under 28 U.S.C. §1930(a)(6), together with any interest thereon pursuant to 31 U.S.C. 3717, from the Post-Confirmation Estate and shall file Post-Confirmation reports including a statement of all disbursements made pursuant to the Plan until entry of an order closing the Chapter 11 Case of Debtor.

## VII. <u>CONCLUSION AND RECOMMENDATION</u>

**BASED ON ALL OF THE FACTS AND CIRCUMSTANCES, THE PLAN PROPONENT CURRENTLY BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR, ITS CREDITORS, AND ITS ESTATES. THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST AVAILABLE ALTERNATIVE FOR MAXIMIZING THE RECOVERIES THAT CREDITORS MAY RECEIVE FROM THE DEBTOR'S ESTATE.   THEREFORE, THE PLAN PROPONENT RECOMMENDS THAT ALL CREDITORS AND INTEREST HOLDERS THAT ARE ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

31st Street Funding LLC

Dated: April 9, 2024
      New York, New York

By: <u>/s/Doris Shen</u>
Name: Doris Shen
Title: Authorized Signatory

<u>Prepared By:</u>

RAVERT PLLC

Dated: April 9, 2024
      New York, New York

By: <u>/s/ Gary O. Ravert</u>
    Gary O. Ravert
    16 Madison Square West, FL 12 #269
    New York, New York 10010
    Tel: (646) 961-4770
    Direct Fax: (917) 677-5419
    Email: gravert@ravertpllc.com

*Attorneys for Plan Proponent*