**RAVERT PLLC**
Gary O. Ravert
16 Madison Square West, FL 12, #269
New York, New York 10010
Tel: (646) 961-4770
Fax: (917) 677-5419

*Attorneys for 31st Street Funding LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MAJOSTAN CORP., | Case No. 23-40331 (ESS) |
| *Debtor.* | |

**31st STREET FUNDING LLC'S AMENDED PLAN OF LIQUIDATION**


**INTRODUCTION**

31st Street Funding LLC ("31st Funding" or the "Plan Proponent"), a secured creditor of Majostan Corp., the debtor and debtor in possession in this Chapter 11 Case (the "Debtor"), hereby proposes the following amended Plan of Liquidation (the "Plan") for the resolution of outstanding Claims and Interests pursuant to section 1121(a) of the Bankruptcy Code.  Reference is made to the amended Disclosure Statement dated June 17, 2024 (the "Disclosure Statement ") filed by 31st Funding in connection with the Plan.  The Disclosure Statement should be reviewed in connection with voting on the Plan.

**ARTICLE I**

**Definitions, Rules of Interpretation,**
**Computation of Time and Governing Law**

**A. Scope of Definitions; Rules of Construction**

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in the Introduction, Article I or elsewhere in the Plan.  Any term used in the Plan that is not defined herein or in the Auction Sale Procedures, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as

the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

## B. Definitions

1.1    "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of operating the business of the Debtor, and all allowances of compensation or reimbursement of expenses for legal or other professional services to the extent allowed by the Bankruptcy Court under Sections 327, 330, 331 and 503 of the Bankruptcy Code, including any additional expenses incurred in connection with the Auction and Sale of the Property.

1.2    "Allowed Administrative Claim" means all or that portion of any Administrative Expense Claim which is an Allowed Claim.

1.3    "Allowed Claim" means "Allowed Claim" means any Claim or portion of a Claim ( a) which is scheduled by the Debtor pursuant to Sections 521(a)(1) and l106(a)(2) of the Bankruptcy Code (other than a Disputed Claim); or (b) proof of which had been timely filed with the Bankruptcy Court pursuant to Section 50l(a) of the Bankruptcy Code or on or before the date designated to the Court as the last date for filing Proofs of Claim, and with respect to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or by an Order of the Court; or which, after objection thereto, has been allowed in whole or in part by a Final Order.

1.4    "Allowed 31st Funding Secured Claim" means the Allowed Claim held by 31st Funding against the Debtor in the amount of $776,529.41, as of the Filing Date, plus postpetition interest in the prepetition amount of approximately $83,205 as of June 30, 2024 (516 post-Filing Date days multiplied by the asserted amount of $161.25 per day interest (the "Daily Rate")), plus postpetition legal fees in the amount of approximately $12,283.59 as of March 21, 2024 pursuant to section 506(b) of the Bankruptcy Code for a total estimated secured claim as of June 30, 2024 of approximately $872,018 and, subject to the limitations set forth in section 506(a)(l) of the Bankruptcy Code secured by, among other things, a duly recorded first priority Lien on the Property and a final judgment of foreclosure and sale (defined below as the "Judgment").

1.5    "Allowed 31st Funding 503(b) Claim" means the Allowed Claim held by 31st Funding against the estate on account of advances, protective payments, legal fees and expenses awarded and allowed by the Court pursuant to a properly filed substantial contribution motion pursuant to section 503 of the Bankruptcy Code, which claim is estimated to be in the amount of approximately $25,000.

1.6    "Assumed Tenant Leases" shall mean any and all valid leases, to the extent such lease or leases have not been rejected by a Final Order of this Court, of any tenant with respect to the Property which leases shall be deemed assumed and assigned as part of the sale of the Property, which such sale shall be subject to such leases to the extent they exist.

1.7    "Auction" means the auction sale of the Property.

1.8     "Avoidance Actions" means any and all Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, including, without limitation, under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, against any other entity arising before or after the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

1.9     "Ballot" means the voting form, if any, distributed to Holders of Claims or Interests in Classes that are Impaired and entitled to vote on the Plan for the purpose of indicating acceptance or rejection of the Plan.

1.10     "Ballot Date" means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of the Plan.

1.11     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101 et seq., and all amendments thereto.

1.12     "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800, having jurisdiction over the Chapter 11 Case, or any such other court as may hereafter exercise primary jurisdiction over the Chapter 11 Case.

1.13     "Bar Date" means October 18, 2023 for all Creditors including governmental units as the final date established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c), for filing timely proofs of Claim arising prior to the Filing Date.

1.14     "Broker" means MYC & Associates, or such other broker that the Plan Administrator may choose at any time after the Effective Date in its sole discretion to render all services in connection with the marketing and sale of Property including without limitation brokerage, liquidation, valuation and appraisal in connections with same, which Broker shall be entitled to receive a commission, fee or other sum in connection with the marketing and sale of the Property.

1.15     "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.16     "Cash" means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items in each case denominated in United States dollars.

1.17     "Cash Collateral" means, from and after the Filing Date, all present and future rents, cash, funds, revenue, income or other payments for the use and occupancy by any tenants residing in or exercising possession or control over the Property or any portion thereof and includes the proceeds, products, offspring, or other profits thereof.

1.18     "Causes of Action" means any and all actions, causes of action, suits, debts, rights to payment, claims, including claims under any insurance policies, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent,

3

matured, un-matured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including without limitation, Avoidance Actions, the proceeds of which shall be held by the Plan Administrator in a segregated account pending Distribution.

1.19    "Chapter 11 Case" means the Debtor's case under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court under case caption styled *In re: Majostan Corp.,* Case No. 23-40331 (ESS).

1.20    "Claim" means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

1.21    "Claimant" means the holder of a Claim or Interest.

1.22    "Class" means a group of Claims or Interests which are substantially similar in nature and are grouped together for similar treatment pursuant to the Plan.

1.23    "Closing" means the closing of the sale of the Property to the Successful Bidder or, as applicable, the Back-up Bidder (in each case as defined in the Auction Sale Procedures), at which point title to the Property will be transferred without further order of the Bankruptcy Court in accordance with the terms contained herein, in the Auction Sale Procedures, and in the Confirmation Order.  The Closing, unless ordered otherwise by the Bankruptcy Court or as set forth in the Auction Sale Procedures, shall take place on the Closing Date.

1.24    "Closing Date" means the date of the Closing or the Back-up Closing Date, which shall take place within thirty calendar days following the Auction, or such later date as may be agreed to in writing by the Plan Administrator, or as established pursuant to the Auction Sale Procedures or order of the Bankruptcy Court, with TIME BEING OF THE ESSENCE AS TO THE OBLIGATION TO CLOSE ON SUCH DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.

1.25    "Conditions Precedent to the Effective Date" means all of the conditions set forth in Article XIII of the Plan which must be satisfied or waived, if subject to waiver, prior to the Effective Date.

1.26    "Confirmation Date" means the date upon which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to the Chapter 11 Case.

1.27    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.28    "Confirmation Hearing" means the date of the hearing to be conducted by the Bankruptcy Court to consider confirmation of the Plan (as such date may be adjourned from time to time).

1.29    "Consummation" means the accomplishment or waiver, if subject to waiver, of the conditions precedent to consummation identified at Article XIII of the Plan.

1.30     "Credit Bid" means the $872,018 credit bid, which amount shall be adjusted upward by the amount of postpetition interest accrued at the Daily Rate (defined in Section 1.4 above) from July 1, 2024 through the date of the Auction, which shall form part of the Opening Bid (defined below) by 31st Funding to acquire all of the Debtor's right, title and interest to the Property at the Auction, by crediting the amount of the Allowed 31st Funding Secured Claim attributable to 31st Funding's Lien against the Property against the purchase price and making up the balance of the Opening Bid in cash, provided however, that if any portion of 31st Funding's Claim is not allowed, 31st Funding will make up the difference, i.e., the disallowed portion of its Credit Bid, with additional cash to make up the Opening Bid as defined herein.

1.31     "Creditor" means any Entity that is the Holder of a Claim arising on or before the Filing Date or under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.32     Intentionally left blank.

1.33     "Debtor" means Majostan Corp. the debtor and debtor-in- possession in this Chapter 11 Case.

1.34     "Debtor's Counsel" means Rosalyn Maldonado P.C., 108 S. Franklin Avenue, Ste 11, Valley Stream, New York 11580, email: rmaldonado@rosalynmaldonadopc.com, Attorneys for Majostan Corp., who as of July 18, 2024 was retained by Order of the Bankruptcy Court to serve as counsel to the Debtor in this Chapter 11 Case [ECF No. 38].

1.35     "Disclosure Statement" means the document filed with the Bankruptcy Court by 31st Funding in connection with the Plan and the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code and approved by order of the Bankruptcy Court as containing "adequate information" as that term is defined at section 1125(a)(1) of the Bankruptcy Code, and any exhibits annexed thereto and any documents delivered or filed in connection therewith, as the same may be amended or modified from time to time by any duly authorized or allowed amendment or modification.

1.36     "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated on the Schedules and/or any Claim against which an objection to the allowance thereof has been interposed, which objection has not been determined by order of the Bankruptcy Court or such other court having jurisdiction over the matter.

1.37     "Disputed Claims Reserve" means the reserve to be established for Disputed Claims in accordance with the terms hereof, which reserve shall be established by the Plan Administrator as soon as practicable after of the Effective Date and which funds shall be maintained at a banking institution that is an authorized depository in the Eastern District of New York.

1.38     "Distribution" means a distribution of Cash pursuant to the Plan.

1.39     "Distribution Date" shall mean the ten (10) Business Days following the Closing Date and such other dates occurring as soon thereafter as reasonably practicable after the Closing when Distributions under the Plan shall commence without further Bankruptcy Court Order and

thereafter shall mean such other dates on which Distributions are made to Holders of Allowed Claims and Interests in accordance with the terms hereof.

1.40    "Effective Date" means the date that is fourteen days after the Confirmation Order is entered by the Bankruptcy Court, or, if such date is not a Business Day, the next succeeding Business Day, unless such Confirmation Order is stayed by Order of the Bankruptcy Court or other Court exercising jurisdiction over this Bankruptcy Case, and all Conditions Precedent to the Effective Date have been satisfied or waived and the Plan Administrator shall file with the Court and serve on all parties in interest a notice of the Plan's Effective Date within three (3) business days of the occurrence of such Effective Date.

1.41    "Entity" is defined as set forth in Section 101(15) of the Bankruptcy Code.

1.42    "Estate" means the collective estate created in Debtor's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.43    "Filing Date" means January 31, 2023, the date on which the Chapter 11 Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.44    "Final Decree" means the order to be entered by the Bankruptcy Court closing the Chapter 11 Case in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.45    "Final Order" means an order or judgment as to which order or judgment (or any revision, modification or amendment thereof) (a) the time to appeal has expired and as to which no appeal has been filed, or (b) an order or judgment which has been appealed, has been affirmed on appeal and as to which appeal the time for further appeal has expired.

1.46    "General Unsecured Claim" means any Claim which does not qualify as an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Allowed 31st Funding Secured Claim, Allowed 31st Funding 503(b) Claim, NYC Dept of Finance Secured Claim, NYC Water Board Secured Claim or Secured Claim held by any other claimholder, and which is not an Interest.

1.47    "Holder" means any Entity that holds a Claim or Interest.

1.48    "Impaired", when used with respect to any Claim, Interest or Class, has the same meaning as that contained in section 1124 of the Bankruptcy Code.

1.49    "Insider" shall have the meaning given to such term in section 101(31) of the Bankruptcy Code.

1.50    "Interest" means any equity interest in the Debtor as defined in Section 101(16) of the Bankruptcy Code.

1.51    "Judgment" means the judgment of foreclosure and sale entered on or about July 1, 2022 against the Debtor, among others, in that state court foreclosure proceeding pending in New York State Supreme Court for Queens County under Index No. 706660/2019.

1.52    "Lien" means with respect to an asset or interest of the Debtor, including with respect to the Property and Cash Collateral, any mortgage, lien, pledge, charge, encumbrance or other security interest of any kind affecting such asset.

1.53    "31st Funding Cash Collateral" means all Cash Collateral generated from and after the Filing Date in connection the Property.

1.54    "NYC Dept of Finance Secured Claim" means that certain claim, designated Claim No. 7 on the Claims Register in this chapter 11 case and filed as a secured claim in the amount of $97,894.54 as of the Filing Date.

1.55    "NYC Water Board Secured Claim" means that certain claim, designated Claim No. 6 on the Claims Register in this chapter 11 case and filed as a secured claim in the amount of $13,690.42 as of the Filing Date.

1.56    "Opening Bid" means the Credit Bid by 31st Funding, as adjusted for additional postpetition interest accrual as set forth in Sections 1.14 and 1.30, plus cash in the amount of $404,253.40 for payment of all claims against the Debtor and the Property as of the Distribution Date, including cash for payment of Administrative Expense Claims and Unclassified Claims, in the total opening bid amount of approximately $1,276,271.40, which bid is subject to the terms of Section 1.30 above with respect to any disallowed portion of 31st Funding's Claim.

1.57    "Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.58    "Plan Administrator" means 31st Funding in its capacity as administrator of the Plan (as may be amended).

1.59    "Post-Confirmation Estate" shall mean the post Confirmation Date estate of the Debtor comprised of (a) the Post-Confirmation Estate Assets including but not limited to the Property including any real property, bank accounts, and rents and proceeds from the Property, (b) such additional or different corpus, assets or investments, if any, as the Debtor or the Post-Confirmation Debtor may from time to time acquire and/or hold and administer under the provisions of the Plan, and (c) without limitation, any and all dividends, rents, royalties, income, proceeds, and other receipts of, from or attributable to the foregoing all of which vests in the Plan Administrator as of entry of the Confirmation Order.

1.60    "Post-Confirmation Debtor" means the Debtor from and after the Confirmation Date.

1.61    "Priority Claim" means any Claim, other than a claim by the Office of the United States Trustee, a Priority Tax Claim, or an Administrative Expense Claim, which is entitled to priority treatment under section 507(a) of the Bankruptcy Code.

1.62    "Priority Tax Claim" means any Claim which is entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

1.63    "Professional Fees" means any claim for compensation and/or reimbursement of expenses under sections 330, 331 of the Bankruptcy Code by any Professionals which must be applied for in accordance with the Bankruptcy Code and the Plan and must be allowed by the Bankruptcy Court before payment thereof may be made.

1.64    "Professionals" shall have the meaning ascribed in Section 327(a) of the Bankruptcy Code in this Chapter 11 Case.

1.65    "Property" means the Debtor's real estate is that certain mixed use real property located at 23-52 31st Street, Astoria, New York, NY 11105 [Block: 842, Lot: 28] (the "Property") including all other assets of any kind related thereto including but not limited to valid leases to which the Debtor or its designee or agent was party as of the Filing Date or became party subsequent to the Filing Date, and further including without limitation, any and all of the rents, accounts receivable, deposits, furniture, fixtures, goods, equipment, inventory, royalties, issues, profits, revenue, income, general intangibles, leases, licenses, tenancies, Cash, Causes of Action, products, books and records and all other personal property of any kind or description owned by the Debtor or attributable to such Property, except however, Property does not include Avoidance Actions.

1.66    "Pro Rata" means proportionally, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the Allowed Amount of the Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the aggregate amount of the Allowed Claims of the Class.

1.67    "Rejection Damage Claim" means any Claim arising from the rejection of any executory contract or unexpired lease in accordance with Article VIII of the Plan.

1.68    "Rejection Damages Bar Date" means the date that is the later of (a) the first Business Day that is at least thirty (30) calendar days after entry of the order authorizing the rejection of the respective executory contract or unexpired lease; or (b) such date as the Court may fix in the Confirmation Order or in such applicable order authorizing such rejection.

1.69    "Related Documents" means the Plan and any documents necessary to consummate the transactions contemplated by the Plan.

1.70    "Sale Procedures" means those bidding procedures annexed hereto as Exhibit "A", which are incorporated herein by reference and approved as part of the Plan which shall govern the conduct of the Auction, the qualification of bidders to bid at the Auction and other matters related thereto.

1.71    "Sales Proceeds" means the cash proceeds of a sale of the Property.

1.72    "Schedules" means the schedules of assets and liabilities in accordance with Bankruptcy Rule 1007(b), filed by the Debtor with the Bankruptcy Court (as same may have been or may be amended from time to time in accordance with Bankruptcy Rule 1009).

1.73    "Secured Claim" means a claim that is either secured by a Lien on any property in which a Debtor has an interest pursuant to sections 506 or 1111(b) of the Bankruptcy Code or subject to setoff under section 553 of the Bankruptcy Code.

### C.  Rules of Interpretation

For purposes of the Plan (1) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (2) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented, (3) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (4) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (5) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (6) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### D.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.  Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of, the State of New York, without giving effect to its conflicts of law provisions or choice of law rules.

## ARTICLE II
## Treatment of United States Trustee Claims

United States Trustee Claims:  All outstanding quarterly fees and any applicable interest thereon owed to the Office of the United States Trustee shall be paid in full on the Distribution Date from the Sales Proceeds, plus available Cash, plus recoveries from Causes of Action or, if 31st Funding is the Successful Bidder, from 31st Funding, from available Cash and from recoveries from Causes of Action.  The United States Trustee Claims are expected to be approximately $35,000 as of the Closing.

## ARTICLE III
## Treatment of Unclassified Administrative and Priority Tax Claims

Administrative Expense Claims.  Administrative Expense Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.  On the Distribution Date, each Allowed Administrative Expense Claim shall be paid in full in Cash from the Sales Proceeds of the sale of the Property or, if 31st Funding is the Successful Bidder, from 31st Funding, from available Cash, and from recoveries from Causes of Action.  The Administrative Expense Claims include all claims against the Debtor for any costs or expenses of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of the Debtor's estate, operation of the Debtor, and the Debtor's Allowed Claim for its attorney's fees.  The Debtor has made minimal other filings and has not filed a sale motion, plan of reorganization or liquation, disclosure statement, motion to use cash collateral or proposed order concerning same, a motion to retain an accountant, or a motion to obtain postpetition financing.  Accordingly, fees for Debtor's attorney should not be more than $20,000.00.  The Debtor's attorney shall file a fee application for fees and costs subject to-approval of the Bankruptcy Court.  The Plan Proponent reserves the right to object to the Debtor's Attorney's fees if they exceed $20,000.00.  31st Funding intends to assert its 31st Funding Allowed 503(b) Claim in the estimated amount of approximately $25,000.  To the extent such Claims become Allowed Claims, such Claims would be unclassified Allowed Administrative Expense Claims.  The Allowed Claim for the Debtor's attorney's fees and all other Allowed Administrative Expense Claims shall be paid from the Sales Proceeds, from available Cash, or from recoveries from Causes of Action or, if 31st Funding is the Successful Bidder, from 31st Funding, from available Cash and from recoveries from Causes of Action.  **Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.**

Administrative Expense Claims, including the 31st Funding 503(b) Claim, must be asserted by no later than thirty (30) calendar days after the Confirmation Date (the "Administrative Claim Bar Date").  Each holder of an Administrative Expense Claim who seeks allowance of an Administrative Expense Claim (a) that is not incurred in the ordinary course of the Debtor's business, (ordinary course claims should have been paid in the ordinary course during this Chapter 11 Case), (b) that is not allowed by a Final Order, and that fails to timely and duly file its application for allowance of its Administrative Expense Claim, or (c) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall NOT be treated as a creditor with respect to such claim for the purposes of receiving any Distribution in connection with such Administrative Expense Claim.  Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date.  Any applications for professional fees shall be filed with the Court and served on the United States Trustee, on counsel for the Debtor, and on counsel to the Plan Administrator.

Priority Tax Claims.  Priority Tax Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.  Each Holder of any Priority Tax Claim that is an Allowed Claim, shall be paid in full in Cash on the Distribution Date from the Sales Proceeds,

from available Cash, and from recoveries from Causes of Action or, if 31st Funding is the Successful Bidder, from 31st Funding, from available Cash and from recoveries from Causes of Action.  Based on a review of the public records and the Claims Register in this case, there appear to be approximately $149,746.23 in priority tax claims as of the Filing Date including Claims for prepetition real estate taxes but not including penalties or postpetition water and sewer charges.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

## ARTICLE IV
## Classification of Claims and Interests

4.1    <u>Designation of Classes Pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.</u> Set forth at Section 4.3 below is the designation of Classes of Claims and Interests.  U.S. Trustee Claims, Administrative Expense Claims, and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code (set forth in Articles II and III above) have not been classified and are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code.

4.2    <u>Allowed Amount in a Particular Class.</u>  An Allowed Claim is part of a particular Class only to the extent of the amount that the Allowed Claim qualifies for treatment within that Class and is in a different Class to the extent that the remaining amount of the Allowed Claim qualifies for treatment within that different Class.

4.3    <u>Classes.</u>  All Allowed Claims shall be divided into the following Classes, which Classes shall be mutually exclusive:

(a)    <u>Class 1</u>.    Class 1 consists of all other Priority Claims.

(b)    <u>Class 2</u>.    Class 2 consists of the 31st Funding Secured Claim.

(c)    <u>Class 3</u>.    Class 3 consists of the NYC Dept of Finance Secured Claim.

(d)    <u>Class 4</u>.    Class 4 consists of the NYC Water Board Secured Claim.

(e)    <u>Class 5</u>.    Class 5 consists of all General Unsecured Claims.

(f)    <u>Class 6</u>.    Class 6 consists of all Interests.

## ARTICLE V
## Treatment of Claims and Interests

**5.1    Class 1:  Allowed Priority Claims**

<u>Treatment</u> - Class 1 consists of the Allowed Priority Claims.  As of the date hereof, there were no non-tax Priority Claims scheduled by the Debtor and no such claims have

been filed as of the Bar Date.  To the extent such Claims are filed and become Allowed Claims, they shall be paid in full from the Sales Proceeds from the sale of the Property, from available Cash, and from the prosecution of Causes of Action, if any, on the Distribution Date.  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  The Plan Proponent does not believe there are or will be any other Priority Claims.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Unclassified Claims and Claims in Classes 1, 2, 3, 4, 5 and 6.  The holder of any Priority Claim, to the extent it is an Allowed Claim, shall be entitled to payment in full.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

Full Settlement - The treatment and consideration to be received by Allowed Priority Claims shall be, subject to the terms hereof, in full settlement and final satisfaction of such Claims against the Debtor.

Class 1 Claims, to the extent they exist, are unimpaired under the Plan and are not entitled to vote.

## 5.2    Class 2:  Allowed 31st Funding Secured Claim

(a)    Treatment - Class 2 consists of the Allowed 31st Funding Secured Claim in the prepetition amount of $776,529.41 as of the Filing Date, plus post-petition interest of approximately $83,205 as of June 30, 2024 (516 days since the Filing Date), plus advances, plus postpetition legal fees in the amount of approximately $12,283.59 as of March 21, 2024, plus interest from July 1, 2024 through payment of the 31st Funding Secured Claim, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of approximately $872,018.  31st Funding intends to file a substantial contribution motion with the Court for all legal fees and expenses, plus an estimate of legal fees and expenses it expects through closing of the case, it seeks pursuant to section 503(b) of the Bankruptcy Code within thirty (30) calendar days of the Confirmation Date.

31st Funding shall be the stalking horse bidder at the Auction.  In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its bid, which shall consist of a credit bd in the amount of its secured claim (approximately $872,018) plus cash sufficient to pay all claims in full on the Distribution Dates (approximately $404,253.40) that would be needed to pay all creditors in full.  If 31st Funding prevails on its Opening Bid, 31st Funding shall take title to the Property subject to any valid leases therein in full satisfaction of its pre- and postpetition claims against the Debtor and the Debtor's estate.  In that case, 31st Funding shall pay in full, in Cash, on the Distribution Date, all Allowed Unclassified and Classified Claims Against the Debtor and pay $10.00 to the Class 6 equity interest.  If 31st Funding is outbid, then the Allowed 31st Funding Secured Claim shall be paid in full from the Sales Proceeds, available Cash, and proceeds from Causes of Action, if any.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

Any objection to the 31st Funding Secured Claim shall be filed with the Court no later than 5:00 PM, thirty (30) calendar days after the Confirmation Date.  The Closing shall take place on no less than ten (10) calendar days written notice.  In the event that there is no timely objection to 31st Funding's Claims, and if the 31st Funding is not the Successful Bidder, then 31st Funding shall be paid at the Closing the prepetition amount of $776,529.41, plus $83,205 as of June 30, 2024, plus legal fees in the amount of $12,283.59 as of March 21,2024, plus interest

at the Daily Rate from and after July 1, 2024 through payment of the 31st Funding Secured Claim, plus legal fees on and after March 22, 2024 pursuant to section 506(b) of the Bankruptcy Code, in the total estimated amount as of June 30, 2024 of approximately $872,018, plus interest at the Daily Rate from July 1, 2024 through payment of the 31st Funding Secured Claim, if there are no objections thereto.  In the event there is a timely filed objection to the 31st Funding Secured Claim then funds in an amount equal to the Disputed Amount shall be placed in the Disputed Claim Reserve to be held by Plan Administrator's attorney, Ravert PLLC, in its attorney escrow account and shall only be distributed in accordance with Article X of the Plan.

   Full Settlement - The treatment and consideration to be received by 31st Funding shall be, subject to the terms hereof, in full settlement and final satisfaction of all of its Claims and Foreclosure Judgment against the Debtor.

   Class 2 is Unimpaired under the Plan and is not entitled to vote.

### 5.3  Class 3:  NYC Dept of Finance Secured Claim

   Treatment - Class 3 consists of the Allowed NYC Dept of Finance Secured Claim in the prepetition amount of $97,894.54 as of the Filing Date, plus post-petition interest in an amount to be determined as of the date of payment of the Allowed NYC Dept of Finance Secured Claim, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of at least $97,894.54.

   In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid, 31st Funding shall pay the Allowed NYC Dept of Finance Claim in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, the Allowed NYC Dept of Finance Claim shall be paid in full from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

   Full Settlement - The treatment and consideration to be received by the Class 3 Allowed NYC Dept of Finance Claimholder shall be, subject to the terms hereof, in full settlement and final satisfaction of all of their Claims in such class against the Debtor but shall not impair its rights to a distribution against the Debtor for any unclassified, priority tax, or general unsecured claims it may hold against the Debtor.

   Class 3 is Unimpaired under the Plan and not entitled to vote.

### 5.4  Class 4:  NYC Water Board Secured Claim

   Treatment - Class 4 consists of the Allowed NYC Water Board Secured Claim in the prepetition amount of $13,690.42.42 as of the Filing Date, plus post-petition interest in an amount to be determined as of the date of payment of the Allowed NYC Water Board Secured Claim, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code for a total secured claim of at least 13,690.42.

   In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid (defined below), 31st Funding shall pay the Allowed NYC Water Board Secured Claim in full in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, the Allowed NYC Water Board Secured Claim shall be paid in full from

the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  This is a highly unlikely scenario since 31st Funding's Opening Bid specifically contemplates enough Cash to pay all claims in full and any higher bid will only yield an additional distribution to the Class 6 Interest holder.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

<u>Full Settlement</u> – The treatment and consideration to be received by NYC Water Board in Class 4 shall be, subject to the terms hereof, in full settlement and final satisfaction of its claims against the Debtor in this Class but shall not impair its rights to a distribution against the Debtor for any unclassified, priority tax, postpetition water and sewer charges or general unsecured claims it may hold against the Debtor.

Class 4 is an Unimpaired Class under the Plan and not entitled to vote.

## 5.5    Class 5:  General Unsecured Claims

<u>Treatment</u> – Class 5 consists of General Unsecured Claims against the Debtor. The General Unsecured Claims filed against the Debtor or scheduled by the Debtor in the Schedules include, as of the Filing Date:  (a) a $3,785.02 general unsecured claim asserted by the NYS Dept of Taxation and Finance as part of Claim No. 1; (b) a $1,535.02 general unsecured claim asserted by the NYS Dept of Taxation and Finance as part of Claim No. 2 (which may be duplicative of Claim No. 1 and will be reviewed by the Plan Proponent and/or Plan Administrator before such claim is paid); (c) a $17,353.76 general unsecured claim asserted by Con Edison as part of Claim No. 3; and (d) a $5,850.77 claim asserted by the Internal Revenue Service as part of Claim No. 5, for a total unsecured class of claims of $28,524.57 (without taking into account the possibility of a duplicative claim), each with interest at the Federal Judgment Rate from the Filing Date through the date of payment of such claim.

In the event 31st Funding is the Successful Bidder and the Property is transferred to 31st Funding pursuant to its Opening Bid, 31st Funding shall pay all the Allowed General Unsecured Claims in full with interest in cash on the Distribution Date.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, then the Allowed General Unsecured Claims shall be paid in full with interest from the Sales Proceeds, from available Cash and from Causes of Action (if any).  If for any reason, 31st Funding is not the Successful Bidder and there is a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with interest with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

<u>Full Settlement</u> – The treatment and consideration to be received by Holders of General Unsecured Claims in Class 5 shall be, subject to the terms hereof, in full settlement and final satisfaction of their respective claims against the Debtor but shall not impair their rights to a distribution against the Debtor for any unclassified, priority tax, postpetition water and sewer charges, or secured claims they may hold against the Debtor.

Class 5 is an Unimpaired Class under the Plan and not entitled to vote.

## 5.6    Class 6:  Interests

<u>Treatment</u> - Class 6 consists of Allowed Interests in the Debtor.  The interests in the Debtor are held solely by Andrew Moulinos, the 100% shareholder.  In the event 31st Funding is the

Successful Bidder and the Property is transferred to 31st Funding pursuant to its bid, 31st Funding shall pay the Class 6 interest holder the sum of $10.00.  In the event the Successful Bidder is a Cash bidder that outbids 31st Funding, then the Class 6 interest holder shall receive all of the Sales Proceeds remaining after all Allowed unclassified and classified claims have been paid in full. Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

   <u>Full Settlement</u> - The treatment and consideration to be received by Holders of Allowed Interests in Class 6 shall be, subject to the terms hereof, in full settlement and final satisfaction of their respective Interests to the extent of the Distributions provided for herein on account of such Interests.

   Class 6 is an Unimpaired under the Plan and is not entitled to vote.

**ARTICLE VI**
**Identification of Classes of Claims and**
**Interests Impaired and Unimpaired Under the Plan**

   6.1 <u>Classes of Claims Impaired by the Plan and Entitled to Vote</u>. Holders of Class 1, 2, 3, 4, 5 and 6 are *unimpaired* and the Holders of Allowed Claims and Interests in such Classes are *not* entitled to vote to accept or reject the Plan.

   6.2 <u>Acceptance by an Impaired Class of Claims</u>.  Consistent with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

   6.3 <u>Class of Claims Unimpaired by this Plan is Conclusively Presumed to Accept this Plan</u>.  Under section 1126(f) of the Bankruptcy Code, the Holders of unimpaired classes are conclusively presumed to accept this Plan, and the acceptances of Holders of such Allowed Claims would not be solicited.  There are no unimpaired Classes and therefore all Classes are entitled to vote on the Plan.

   6.4 <u>Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ("Cram Down")</u>.  With respect to any Impaired Class that does not accept the Plan or is deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code, 31st Funding intends to request that the Bankruptcy Court "cram down" any such Class(es) and confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

**ARTICLE VII**
**<u>Controversy with Respect to Impairment</u>**

   In the event of a controversy as to whether a Class of Claims or Interests is Impaired, the Court shall, after notice and a hearing, determine such controversy.

**ARTICLE VIII**
**<u>Unexpired Leases and Executory Contracts</u>**

8.1    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  The Property is occupied and may be subject to several leases.  As of the Effective Date, any valid leases of any tenant with respect to the Property *shall be deemed assumed and assigned* as part of the sale of the Property and *the sale shall be subject to such leases to the extent they exist* (defined above as the Assumed Tenant Leases).  The Property is being sold AS-IS, WHERE-IS with all faults including any leases to the extent they exist.  Any other leases rejected by order of the Bankruptcy Court shall be deemed to have been rejected as of Confirmation.  All Assumed Tenant Leases will be deemed to be assumed and assigned to the Successful Bidder or Back-up Bidder, as the case may be, as of the date of the Closing.  The Confirmation Order will include provisions for the assumption and assignment of the Assumed Tenant Leases.

8.2    <u>Bar Date for Rejection Damage Claims</u>.  Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, the Confirmation Order shall provide that any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Debtor must be filed with the Bankruptcy Court on or before the Rejection Damages Bar Date, with a copy thereof to (a) the Plan Proponent's counsel, Ravert PLLC; (b) counsel for the Debtor, Rosalyn Maldonado, Esq.; and (c) the United States Trustee for the Easern District of New York, One Bowling Green, New York, New York 10004.  Any Entity that fails to file and serve its Rejection Damage Claim within the time period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, Plan Administrator, the Post-Confirmation Estate or any Property or interests in Property of the Debtor or the Post-Confirmation Estate.  All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 5) under the Plan.

## ARTICLE IX
## Means for Effectuating the Plan
## <u>Implementation of The Plan</u>

9.1    <u>General</u>.  This Plan is a liquidating plan that contemplates the orderly liquidation of all property of the Debtor's estate and as such, the Plan does not entitle the Debtor to a discharge.  All Claims against the Debtor are addressed herein and are paid in whole pursuant hereto.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.  As of the date the Confirmation Order is entered, unless such Order is stayed, the Plan Administrator shall control for all purposes all of the Debtor's property including the Property, any and all bank accounts of the Debtor and any other assets, and the Property shall be operated and managed by the Plan Administrator (or such property manager he may retain) and such Property and funds shall be property of the Post-Confirmation Estate.  31st Funding is deemed to consent to the use of any funds in the Debtor's bank accounts to the extent such funds are 31st Funding's Cash Collateral.  The Plan Administrator or any such property manager that may be employed shall be authorized to continue the usual and ordinary operations of the Property pending the Auction Sale and Closing for the Property in accordance with the terms hereof, and to spend funds of the Post-Confirmation Estate as may be necessary to carry out the terms of this Plan.  The Plan Administrator shall cause the Property to be sold at a public Auction in accordance with the terms hereof, including the Auction Sale Procedures.

9.2     <u>Sale of the Property in Accordance With the Auction Sale Procedures.</u>

(a)     The Property shall be sold in accordance with the Auction Sale Procedures (which are annexed hereto at Exhibit "A") and the terms hereof, which shall govern all aspects of the sale.

(b)     31st Funding is deemed a Qualified Bidder with an initial bid in the amount of the $1,276,271.40 (which shall be adjusted to provide for full payment of all claims against the Debtor after taking into account interest and other charges allowed by the Court) which shall constitute the Opening Bid and such bid shall constitute the opening bid at the Auction.  As such amount is in part a credit bid, 31st Funding shall not be entitled to a break-up fee. Break-up fees for Cash Bidders not exceeding 3% of such bid to reimburse actual proven expenses shall be permitted in the sole discretion of the Plan Administrator upon consultation with the Broker but such break-up fees shall only be permitted where a bidder is a Cash bidder. To the extent any portion of the 31st Funding Secured Claim is disallowed, 31st Funding shall make up the disallowed portion in cash as part of its Opening Bid.  Under no circumstances and regardless of the face amount of its Opening Bid, will 31st Funding be required to pay out in Cash any more than is necessary to pay all claims in full with a $10.00 distribution to Class 6 if it is the Successful Bidder, or to make up any unlikely shortfall in the event it is outbid at the Auction.

(c)     The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, authorizing and directing the Debtor and Post-Confirmation Debtor to the extent necessary and requested by the Plan Administrator to execute or deliver or to join in the execution or delivery of any and all instruments required to effect a transfer of the Property, including any assumed leases, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan and, pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.  The Plan Administrator shall be authorized and directed to carry out the Debtor's obligations in the event the Debtor or Post-Confirmation Debtor fails or refuses to do so.

(d)     Pending the Closing of the sale of the Property, from and after the Effective Date, the Plan Administrator shall be authorized to, without limitation (i) maintain and preserve the Property, including but not limited to collecting rents and enforcing leases subject to the Property continuing to be operated and managed by the Plan Administrator or a designated property manager appointed by the Plan Administrator in accordance with the terms hereof; and (ii) take all necessary steps, and perform all necessary acts to consummate the terms and conditions of the Plan, including commencing Causes of Action for the benefit of the estate.

(e)     Notwithstanding anything contained herein or in the Auction Sale Procedures to the contrary, any person or entity acquiring the Property at the Auction, shall assume and be fully responsible and liable for enforcing leases after Closing and evicting or otherwise removing any tenants, subtenants or other persons renting, using or occupying any units therein to the extent such tenants, subtenant, or other persons do not hold valid leases that have been assumed hereby, including any of their personalty, from and after the date of the Closing.

(f)    The Plan Administrator's Authority. In accordance with the terms hereof, the Plan Administrator is authorized to, among other things, execute and/or deliver and/or to join in the execution and/or delivery of any and all instruments required to effect a transfer of the Property through an Auction, without limitation, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.  The Plan Administrator may, in its sole discretion after consultation with the Broker, and without further order of the Bankruptcy Court, enter into a contract of sale with a stalking horse bidder if the Plan Administrator and Broker reasonably believe that such stalking horse bid is beneficial to the Auction process and the Plan Administrator may offer bid protections of up to 3% of the purchase price in provable expenses in the event the stalking horse bidder is out bid.

9.3    Transfer Taxes.  The consummation of the Closing for the Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such sale, transfer and delivery of any and all instruments of transfer, without limitation, in connection therewith shall not be taxed under any Transfer Taxes, stamp tax, real estate transfer tax, mortgage recording tax or similar tax and to the extent permitted by §1146(a) of the Bankruptcy Code shall not be subject to any state, local, or federal law imposing sales tax.  Such exemption shall include any transfer of the Property and the 31st Funding Cash Collateral to 31st Funding or its designee or to the Successful Bidder or purchaser if it is not 31st Funding.

9.4    Transfer of Assets.   At the Closing for the Property, the Plan Administrator shall consummate the Closing and sale of the Property and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Bankruptcy Code.  The purchaser, whether it 31st Funding, the Successful Bidder or, if applicable the Back-Up Bidder, shall receive (a) title to the Property by a bargain and sale deed without covenants against grantor's acts executed by the Post-Confirmation Debtor (and if the Post-Confirmation Debtor refuses, executed by the Plan Administrator on the Post-Confirmation Debtor's behalf) for and on behalf of the Post-Confirmation Debtor and its Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (b) together with any and all New York State and other governmental transfer tax returns; and (c) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the transfer and recording of the deed to the Property subject to the Bankruptcy Code section 1146(a) exemption, and to effectuate the transfer of the Property.  The Post-Confirmation Debtor, the Plan Administrator, 31st Funding, and the Broker, do not make any representations or warranties whatsoever.  The Property is being sold pursuant to the Plan "AS IS", "WHERE IS" in its condition on the Closing Date without any representations, covenants, guarantees or warranties by the Plan Administrator, the Post-Confirmation Estate, Plan Proponent or the Broker of any kind or nature whatsoever, and free and clear of any Liens, claims or encumbrances of whatever kind or nature accrued through the date of the Auction, except the Sale is subject to any and all valid leases, and any such Liens, claims, or encumbrances, if any, shall attach to the Sales Proceeds, and remain subject to any Liens, claims or encumbrances of whatever kind or nature thereafter accrued as of the date of the Auction. Any such Liens, claims or encumbrances of whatever kind or nature accruing from and after the Closing Date shall be the responsibility of the person or entity acquiring the Property at the Closing, whether it be 31st Funding through a Credit Bid, or any other entity or person in accordance with the terms of the Plan and Auction Sale Procedures.

18

9.5    <u>Cooperation of the Debtor's Principal</u>. The Post-Confirmation Debtor and its authorized signatories shall, at all times, reasonably cooperate with the Plan Administrator and the purchaser, Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns.  The Debtor's principal shall, at all times, reasonably cooperate with the Plan Administrator and the purchaser, Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns in connection with the Auction, any Closing for the sale of any Property, and the administration of the Post-Confirmation Estate.  The Plan Administrator shall be authorized to execute or otherwise take any lawful acts, without limitation, to carry out the terms of this Plan and the Confirmation Order to the extent the Debtor, the Debtor's principal or principals on the Debtor's behalf, or Post-Confirmation Debtor refuses to do so itself.

9.6    <u>Plan Funding and Causes of Action</u>. The funds needed to pay all unclassified Claims including U.S. Trustee Fees, Allowed Administrative Expense Claims and including any claims of the Plan Administrator for services rendered and expenses incurred, Allowed Priority Tax Claims, Allowed Priority Claims, the Allowed NYC Dept of Finance Secured Claim, the Allowed NYC Water Board Secured Claim will be paid, as set forth herein by 31st Funding, available Cash, from post-Effective Date Cash from rents and proceeds from the Property, and/or recoveries from Causes of Action as set forth herein if it is the Successful Bidder, or if it is outbid at the Auction then from the Sales Proceeds, available Cash, and post-Effective Date Cash from rents and proceeds from the Property, and/or recoveries from Causes of Action as set forth herein.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Unclassified Claims and Claims in Classes 1, 2, 3, 4, 5 and 6.

9.7    <u>Management of the Debtor</u>.  On and after the Effective Date, the Post-Confirmation Estate will be managed and administered for all purposes by the Plan Administrator or through his designee or property manager, if any, retained by the Plan Administrator and the operations of the Debtor shall cease.  The Plan Administrator and its professionals shall be compensated from the Post-Confirmation Estate at a rate of no more than $360 per hour.  The Plan Administrator has agreed to retain Ravert PLLC as its bankruptcy counsel at a rate of $360 per hour, and may retain without further order of the Court special litigation counsel at their customary rates if the need arises.  Professionals retained by the Plan Administrator shall not be required to file a fee application.  The payment of the fees and expenses of the Plan Administrator and the Plan Administrator's retained professionals shall be made from the Post-Confirmation Estate including but not limited to the Sales Proceeds, available Cash, and proceeds of Causes of Action.  No payments may be made to the Plan Administrator or its professionals from the Post-Confirmation Estate unless a statement of such fees and expenses has been sent to the Office of the United States Trustee and at least ten (10) Business Days have past without objection.  Any objections that are not resolved shall be resolved by the Bankruptcy Court.  Post-Effective Date, the Plan Administrator shall maintain the books and records for the Post-Confirmation Estate including revenue and expenditures of the Post-Confirmation Estate but shall not be required to file tax returns for the Debtor.  The Debtor's principal shall bear the sole responsibility for the filing of the Debtor's tax returns for as long as applicable law requires such returns to be filed.  The Plan Administrator's duties shall terminate upon the closing of this Bankruptcy Case.

9.8    <u>Execution of Documents</u>. The Plan Administrator, or its designee, is hereby authorized to and shall execute, release and deliver, for and on behalf of the Post-Confirmation

Debtor and its Estate, all documents reasonably necessary to consummate the sale of the Property contemplated by the terms and conditions of the Plan, including without limitation, any documents required in connection with the Closing and the sale of the Property in accordance with the Plan.

9.9     Filing of Documents.  Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the  Bankruptcy  Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record the Confirmation Order and any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

9.10    Transactions on Business Days.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

9.11    Implementation.   Pursuant to the Confirmation Order and upon confirmation of the Plan, the Plan Administrator shall be authorized to take all necessary steps, and perform all necessary acts, to conduct the auction and consummate the terms and provisions of the Plan. Post-Confirmation, but on or before the Distribution Date, the Plan Administrator may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.  The Plan Administrator is hereby authorized to, and shall, execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan, without the need for any additional approvals, authorizations, consents or orders of the Bankruptcy Court, including but not limited to prosecuting any and all Causes of Action. Upon the completion of all acts required to be performed by the Plan Administrator and the Post-Confirmation Debtor under the Plan, the Plan Administrator shall file a certification of same with the Bankruptcy Court (which may be included in the application for entry of the final decree). The Plan Administrator shall then be relieved of its duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Administrator and/or the Post-Confirmation Debtor, the Post-Confirmation Estate, or payments to be made in connection therewith.  From and after the final Distribution Date, except as provided herein, the Post-Confirmation Estate and the Plan Administrator shall not be required to file any document, or take any action to withdraw the Post-Confirmation Debtor's business operation from any States where the Debtor previously conducted business operations.

9.12    Post-Confirmation Estate

(a)     Creation of Post-Confirmation Estate.  On the Effective Date a Post-confirmation Estate will be created and vest in the Plan Administrator consisting of the Property located at 23-52 31st Street, Astoria, New York, NY 11105 [Block: 842, Lot: 28], any bank accounts and Cash and deposits therein, and any other property of the Debtor including but not limited to interest in leaseholds or use and occupancy by any person or entity in possession of the Property and Causes of Action, from which payment in connection with all remaining Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims,

Allowed Priority Claims, the Allowed NYC Dept of Finance Secured Claim, the Allowed NYC Water Board Secured Claim, Allowed General Unsecured Claims, and any other Allowed Claims, together with the Operating Expenses shall be paid as set forth in the Plan.

        (b)    <u>Vesting of Estate Assets</u>.  On the Effective Date, and in accordance with the Confirmation Order, all of the Post-Confirmation Estate Assets including without limitation the Properties and assets referenced in Section 9.12 (a) herein shall remain with and shall vest in the Plan Administrator on behalf of the Post-Confirmation Estate under the control of the Plan Administrator, to be administered in accordance with the terms of the Plan.

        9.13    <u>Preservation and Vesting of Claims, Rights, Demands and Causes of Action</u>. Pursuant to section 1123 of the Bankruptcy Code, the Plan Administrator, on behalf of and for the benefit of the Post-Confirmation Estate, shall be vested with, shall retain, and/or shall have the authority to prosecute and enforce any and all claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands, Avoidance Actions, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor, its Estate, the Plan Administrator, the Post-Confirmation Debtor and/or the Post-Confirmation Estate. The Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate, will also be authorized to challenge, object to and/or settle disputed Claims, without first having to seek approval from the Bankruptcy Court, in accordance with the terms and provisions hereof.  The Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate will be authorized and empowered to bind the Post-Confirmation Estate thereto.  Any settlement by the Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate, pursuant to and in accordance with the terms hereof shall be conclusively deemed to be in the best interests of the Post-Confirmation Estate.

        9.14    <u>Recoveries</u>.  All Cash, proceeds and/or recoveries from the Avoidance Actions and Causes of Action and all other proceeds derived from the Plan Administrator's liquidation of Post-Confirmation Estate Assets will be included in the Post-Confirmation Estate and administered and disbursed in accordance with the provisions of the Plan.

        9.15    <u>Reporting Requirements</u>.  The Plan Administrator, with the assistance of a property manager (if the Plan Administrator so chooses to retain one), if any, shall prepare and maintain distribution schedules with respect to all Classes of Claims and shall prepare and file all Post-Confirmation reports required by the Court and the Office of the United States Trustee and the Plan Administrator shall file such post-confirmation reports (i) after the Effective Date of the Plan, (ii) by the 20th day after the conclusion of the relevant reporting quarter, (iii) utilizing forms promulgated in compliance with 28 CFR § 58.8, and (iv) until the entry of a final decree closing this case, conversion of the case to chapter 7, or dismissal, whichever happens earlier.

        9.16    .  When all objections to all Claims have been resolved by a Final Order or otherwise in accordance with the terms hereof, and all Post-Confirmation Estate Assets have been converted to Cash or abandoned, the Plan Administrator shall compute the final Pro Rata share of all Claimants and distribute the Cash on the Distribution Date.  No greater than ninety (90) days following the date of the Effective Date, the Plan Administrator shall file with the Bankruptcy Court and serve on the U.S. Trustee and those parties who have requested special notice Post-Confirmation, a status report and a summary financial update explaining what progress has been made toward entry of the Final Decree, including a statement of all disbursements made pursuant to the Plan along with an estimated date when an application for a

Final Decree will be filed with the Court. Until entry of the Final Decree, further status reports including a statement of all disbursements made pursuant to the Plan shall be filed periodically approximately every ninety (90) days and served on the same entities to the extent any assets remain for liquidation and distribution. Each status report shall generally include a description of Post-Confirmation Estate Assets sold or otherwise realized upon during the relevant period, gross and net proceeds received, distributions and payments made, expenses incurred and paid, and cash on hand. A standard Post-Confirmation Operating Report as required by the U.S. Trustee shall meet the requirements of this status report.

9.17    <u>Post-Confirmation Debtor</u>. Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor. However, all property of the Debtor, including the Properties, real properties, bank accounts, Avoidance Actions and Causes of Action, however, shall vest in the Plan Administrator on the Effective Date and the Debtor and the Debtor's principal(s) shall have no further authority over such estate assets and claims of any type. The Debtor may dissolve after, and only after, the entry of a Final Decree if it so desires. The Debtor's principals shall be responsible for preparing or causing to be prepared all local, state, or federal tax returns, filings, and/or reports that are necessary or appropriate. Although as of the Effective Date the Debtor's operations shall cease, to the extent that the Debtor has independent reporting requirements Post-Confirmation such reporting requirements shall be unaffected by this Plan. To the extent that Post-Confirmation reports are due based on the operations of the Post-Confirmation Estate, the Plan Administrator shall be solely responsible for the filing of such reports.

9.18    <u>Prosecution of Objections to Claims; Amendment of Schedules</u>. Except as set forth herein, the Plan Administrator reserves the right and shall have the sole authority, subsequent to the Confirmation Date but prior to the Chapter 11 case being closed, to object to any Claim or request for allowance of an Administrative Expense Claim, whether included on the Debtor's Schedules or reflected in a proof of claim filed with the Bankruptcy Court, and to initiate contested matters and to initiate such proceedings as may be necessary and appropriate in the Bankruptcy Court for a determination of the Allowed Amount of any and all Claims or requests for allowance of Administrative Expense Claims in accordance with the terms hereof. The Debtor and the Office of the United States Trustee shall retain the right to object to the 31st Funding Secured Claim, provided however that such objection shall be filed with the Court no later than 5:00 PM, thirty calendar days after Confirmation Date. The Debtor and the Office of the United States Trustee shall retain the right to object to the 31st Funding 503(b) Claim, provided however that such objection shall be filed with the Court no later than 5:00 PM, thirty calendar days after Administrative Bar Date. The rights of the Debtor and the Office of the United States Trustee to object to (i) any Administrative Expense Claim or (ii) any claim asserted by 31st Funding, whether in its own capacity or its capacity as Plan Administrator, shall be preserved provided however that any such objections must be timely asserted as set forth herein. Any claim objection filed by the Plan Administrator shall be served on the United States Trustee.

**ARTICLE X**
**<u>Distributions; Disputed Claims Reserve</u>**

10.1    <u>Timing of Distributions Due Under Plan.</u> (a) All Distributions and payments required under the Plan to Holders of Allowed Claims will be paid from the Post-Confirmation Estate on the dates and in the manner indicated in the Plan. Except as otherwise provided in the Plan, without in any way limiting Sections 11.5 and 11.6 below, and subject to the terms of the

22

Plan, Distributions in respect of the (i) Allowed Claims in Class 1 of the Plan shall be made as set forth in Section 5.1; (ii) Allowed Claims in Class 2 of the Plan shall be made as set forth in Section 5.2; (iii) Allowed Claims in Class 3 of the Plan shall be made as set forth in Section 5.3; (iv) Allowed Claims in Class 4 of the Plan shall be made as set forth in Section 5.4, and (v) Allowed Claims in Class 5 of the Plan, in each case as required by the Plan from the Post-Confirmation Estate Assets on, or as soon as practicable following, the dates provided for such Allowed Claims under the Plan.

10.2    <u>Manner of Distributions</u>.  At the option of the Plan Administrator, Distributions from the Post-Confirmation Estate may be made by wire transfer, check, or such other method as the Plan Administrator deems appropriate under the circumstances and in the Plan Administrator's sole discretion.  No Distributions shall be required to be made to any Holder of an Allowed Claim in an amount less than five ($5.00) dollars, unless request is made, in writing, to the Debtor.

10.3    <u>Cash Payments.</u>  Cash payments made pursuant to the Plan will be in U.S. dollars. Cash payments made pursuant to the Plan in the form of checks issued by the Plan Administrator shall be void if not cashed within one hundred twenty (120) days of the date of the issuance. Requests for reissuance of any check shall be made directly to Plan Administrator as set forth in Section 10.8 below.

10.4    <u>Disputed Claims Reserve.</u>

(a)    Contemporaneously with the Closing on the Property, or as soon thereafter as the Plan Administrator shall determine, the Plan Administrator shall establish the Disputed Claims Reserve except that the Disputed Claim Reserve for any portion of 31st Funding's Claim shall be held in the attorney escrow account of Ravert PLLC.  For purposes of establishing the Disputed Claims Reserve, the Plan Administrator shall reserve the maximum allowable amount for each Disputed Claim and shall deposit such funds at a banking institution that is an authorized depository in the Eastern District of New York.  On the date of any Distribution, the Plan Administrator shall deposit into the Disputed Claims Reserve Cash equal to the maximum amount that would be distributable to all Holders of Disputed Claims in respect of all Distributions made on that date, if such Disputed Claims were Allowed.  Except for any Reserve for a 31st Funding Disputed Claim, the Plan Administrator shall maintain the Disputed Claims Reserve in a segregated, interest bearing account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim.

(b)    In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim, the Plan Administrator shall distribute to the Holder of such Allowed Claim from the Disputed Claims Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Effective Date.

(c)    From time to time as Disputed Claims are disallowed or become Allowed Claims in amounts less than what was reserved, the Cash deposited in the Disputed Claims Reserve that otherwise would have been distributed to the holders of such Disputed Claims shall be released from and no longer held in the Disputed Claims Reserve and, subject to the provisions hereof, shall be distributed in accordance with this Section 10.1.

10.5    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 and any applicable interest thereon as determined by the Bankruptcy Court as of the Confirmation Date, to the extent not previously paid by the Debtor, shall be paid by the Plan Administrator from the operating income of the Plan Administrator, if any, pending the Closing on the Sale of the Property and, upon the Closing, from the Sales Proceeds, from available Cash and from recoveries from Causes of Action.  If 31st Funding is the Successful Bidder based on its Opening Bid, the statutory fees pursuant to 28 U.S.C. §1930, together with any interest thereon pursuant to 31 U.S.C. 3717, shall be paid in full by 31st Funding.  After the Effective Date, all fees pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon pursuant to 31 U.S.C. 3717, shall be paid by the Plan Administrator until the earlier of the entry of the Final Decree or an order of conversion or dismissal.  If for any reason, 31st Funding is not the Successful Bidder and is outbid at the Auction and there is nonetheless a shortfall of Cash to pay claims, 31st Funding will backstop the Plan to make up the shortfall.

10.6    <u>Interest on Claims</u>.  Holders of Allowed General Unsecured Claims under Class 5 of the Plan shall only receive interest in the amount of the Federal Judgment Rate on any Distribution to which such Holder would be entitled hereunder, if and only if, there are sufficient funds for Distribution that would otherwise go to Class 6 Interests.

10.7    <u>Withholding of Taxes.</u>

(a)    The Plan Administrator may withhold from any Property to be distributed under the Plan any Property which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law.  As a condition to making any Distribution under the Plan, the Plan Administrator may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification or documentation as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b)    Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations

10.8    <u>Undeliverable or Unclaimed Distributions</u>.

(a)    All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Debtor's Schedules or in the Claims Register in this case unless a Claim Holder notifies the Plan Administrator in writing after the Effective Date of a change of address. Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Plan Administrator for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Plan Administrator to reissue such check, and (ii) provides the Plan Administrator with such documentation as the Plan Administrator requests to verify in her/his sole discretion that such Entity is entitled to such check.  If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution or Post-

24

Confirmation Estate provided for in such check.  Any such forfeited Distributions shall revert to the Post-Confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(b)    In the event that any Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distributions will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address.  All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Post-Confirmation Estate and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary.  Upon such forfeiture of Cash or other Post-Confirmation Estate property, such Cash or Post-Confirmation Estate Assets shall be the property of the Post-Confirmation Estate.

10.9    <u>Post-Effective Date Operating Expenses</u>.   The reasonable fees and expenses of the Plan Administrator and his/her Professionals incurred after the Confirmation Date shall constitute Operating Expenses of the Post-Confirmation Estate and shall be payable from available Cash including Cash from rents or any other proceeds of the Property or Causes of Action, or income from the Post-Confirmation Estate upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Plan Administrator, with a copy to the Office of the United States Trustee.  The Plan Administrator and U.S. Trustee shall have ten (10) Business Days from the receipt of any such fee and expense statements to dispute all or part of such statement.  Upon the expiration of said ten (10) Business Days, provided there are sufficient funds available in the Post-Confirmation Estate, the Plan Administrator or Estate or its manager shall pay the Professionals the undisputed portion of such fees and expenses.  Any disputes shall be submitted to the Bankruptcy Court for determination.

## ARTICLE XI
### Procedures for Resolving Disputed Claims

11.1    <u>Objections to Claims</u>.  From and after the Confirmation Date except as otherwise provided in the Plan, (a) only the Office of the United States Trustee and the Debtor shall have the authority to file or litigate to judgment objections to any Claim held by 31st Funding, which objection must be filed and served as set forth in Section 9.17 above, and (b) only the Plan Administrator shall have the right to object to, settle, compromise, and/or withdraw objections to any other Claims, whether Unclassified, Priority or otherwise.

11.2    <u>Procedure.</u>  Except as set forth in Section 11.1 above, unless otherwise ordered by the Bankruptcy Court or until an objection to a Claim by the Plan Administrator is withdrawn, except as set forth above, only the Plan Administrator may litigate the merits of each Disputed Claim until a Final Order is entered with respect to such Claim.

11.3    <u>Payments and Distributions With Respect to Disputed Claims</u>.  No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim.

11.4    Estimation of Claims Reserve.  For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to Holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Distribution Date, or such later date as may be established by the Bankruptcy Court and/or the Plan Administrator, pursuant to section 502 of the Bankruptcy Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which event the amount so fixed will be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent or unliquidated amount for such Claim, which amount will be the maximum amount in which such Claim ultimately may be Allowed under the Plan, if such Claim is ultimately Allowed in whole or in part.  The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims from the Post-Confirmation Estate, regardless of the amount finally Allowed on account of such Disputed Claims, and no Holder shall have recourse against the Post-Confirmation Estate, the Debtor, the Plan Administrator, or the Plan Proponent or any of their respective Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their respective property, as such Holder's sole recovery shall be from the Distributions to be made to Holders of Allowed Claims (subject to any claims that any Holder may have against any guarantors).

11.5    Distributions After Allowance of Disputed Claims.  Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan.

11.6    Distributions After Disallowance of Disputed Claims.   Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such Holder's Claim, may receive subsequent Distributions if and to the extent that other Claims are disallowed or expunged and additional funds for distribution become available in each case pursuant to and in accordance with Article V of the Plan.

11.7    Setoffs and Recoupments.  Except with respect to Avoidance Actions or Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Plan Administrator or its designee as instructed by the Plan Administrator, or Post-Confirmation Estate as instructed by the Plan Administrator, as the case may be, may pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law and the provision by the Plan Administrator of three-days' written notice to the affected Creditor, set off or recoup against any Allowed Claim, the Distributions to be made pursuant to the Plan on account of such Claim, any Causes of Action of any nature that the Debtor, the Post-Confirmation Estate, or that the Debtor's successors may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor, the Post-Confirmation Debtor, the Plan Administrator or the Post-Confirmation Estate, or their successors, of any Avoidance Actions or Causes of Action that the Plan Administrator, the Debtor, the Post-Confirmation Debtor, the Post-Confirmation Estate, or their successors may possess against such Holder.

## ARTICLE XII
## Injunction, Release and Exculpation

12.1     Injunction.   On and after the Effective Date, each Holder of a Claim or Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Plan Administrator, the Post-Confirmation Estate, and/or the Successful Bidder from implementing the Plan or the Confirmation Order or exercising control over the Property or any asset of the Post-Confirmation Estate, including without limitation the real property, bank accounts, rents, and/or use and occupancy of the Debtor.

12.2     Exculpation.   Neither the Plan Proponent nor any of their respective officers, directors, members, employees or other agents, financial advisors, attorneys, and accountants shall have any liability to any Holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct, gross negligence, legal malpractice, fraud and/or criminal conduct as finally determined by a Final Order of the Bankruptcy Court.  Neither the Plan Proponent nor the Plan Proponent shall be liable for a debt of the Debtor, the Debtor's Estate or the Post-Confirmation Estate (as appropriate) solely as a result of its role as Plan Proponent or Plan Administrator.

## ARTICLE XIII
## Conditions Precedent to the Confirmation
## Order, the Effective Date and Consummation of the Plan

13.1     Condition Precedent to Entry of the Confirmation Order.  The following condition must be satisfied on or before the Confirmation Date:  The Confirmation Order must be in form and substance reasonably acceptable to the Plan Administrator and Plan Proponent.

13.2     Conditions Precedent to the Effective Date.   The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective: The Effective Date is the date that is fourteen days after the Confirmation Order is entered by the Bankruptcy Court, or, if such date is not a Business Day, the next succeeding Business Day, unless such Confirmation Order is stayed by Order of the Bankruptcy Court or other Court exercising jurisdiction over this Bankruptcy Case, and all Conditions Precedent to the Effective Date have been satisfied or waived.

13.3     Condition Precedent to Consummation.  Upon the Auction having occurred and upon the completion of the Closing, the Plan shall be deemed substantially consummated.

If the Plan has not been consummated in accordance with the terms hereof within one hundred eighty (180) days of the Confirmation Date, or such longer period as may be agreed by the Plan Administrator, the Plan Administrator shall file with the Bankruptcy Court and serve a notice indicating an inability to consummate the Plan and the Bankruptcy Court shall thereafter schedule a hearing to consider the just disposition of the Chapter 11 case.

13.4    Effect of Failure of Conditions.  If all the Conditions Precedent to the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than one hundred eighty (180) days after the Confirmation Date, or by such later date as is proposed and approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by the Plan Proponent made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the order confirming the Plan shall not be vacated if all of the conditions to Consummation set forth in Section 13.3 are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 13.4, the Plan shall be void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or (b) prejudice in any manner the rights of the Holder of any Claim or Interest in the Debtors.

**ARTICLE XIV**
**Miscellaneous Provisions**

14.1    Bankruptcy Court to Retain Jurisdiction.  Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

(a) To consider any modification of the Plan under Bankruptcy Code § 1127 and/or modification of the Plan before "substantial consummation" thereof as defined in Bankruptcy Code § 1101(2);

(b) To hear and determine all controversies, suits, and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

(c) To hear and determine all controversies, suits, and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor or the Plan Proponent or any other party or party in interest, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

(d) To hear and determine all rights or Avoidance Actions or Causes of Action which may exist on behalf of the estate;

(e) To hear and determine all applications for allowance of compensation and expense reimbursement of Professionals for periods prior to the Effective Date;

(f) To hear and determine any and all applications, motions, adversary proceedings, contested matters or litigated matters;

(g) To enter a final decree closing this Chapter 11 Case; and

(h) To hear and determine any disputes concerning tenancy, possessory rights, leases and/or any dispute concerning the Property that might otherwise be litigated in landlord tenant court outside of this Bankruptcy Case and this Court shall retain jurisdiction to enter an order of eviction and to authorize the U.S. Marshall to carry out orders of eviction or orders to vacate;

(i) To hear and determine any application (a) by the Plan Administrator to resign or, (b) by any other party to remove the Plan Administrator for cause; and

(j) To the extent not set forth above, to hear and determine any and all disputes, matters, proceedings, or controversies arising under or in connection with the Plan to aid in the administration or consummation of the Plan.

14.2    <u>Binding Effect of the Plan</u>.  Nothing contained in the Plan or the Disclosure Statement will limit the effect of confirmation as set forth in Bankruptcy Code §1141.  The provisions of the Plan shall be binding upon and inure to the benefit of the Plan Administrator, the Post- Confirmation Estate, any Holder of a Claim or Interest, or their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity affected by the Plan.

14.3    <u>Fractional Cents</u>.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

14.4    <u>Successors and Assigns</u>.   The rights and obligations of any person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person or Entity.

14.5    <u>Blank Ballots.</u>  Not Applicable.

14.6    <u>Authorization of Corporate Action</u>.  Upon the entry of the Confirmation Order, all actions contemplated by the Plan will be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the transfer and/or contribution of the Post-Confirmation Estate Assets and no further Court orders will be needed to implement the Plan and transactions contemplated herein.  On the Confirmation Date, appropriate members or authorized signatories of the Debtor, the Post-Confirmation Debtor are directed to execute and deliver, and if the Debtor or the Debtor's principals refuse, the Plan Administrator is hereby authorized and directed to execute and deliver on their behalf, any and all agreements, documents and instruments contemplated by the Plan, the Post-Confirmation Estate and/or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without the need for any additional authorizations, approvals or consents.

14.7    <u>Withdrawal of the Plan</u>.  The Plan Proponent reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan in its sole discretion.  If the Plan Proponent revokes or withdraws the Plan, or if the Confirmation Date does not occur, or

if the Effective Date does not occur then (a) the Plan will be deemed null and void and (b) the Plan shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed and, in such event, the rights of any Holder of a Claim or Interest shall not be affected nor shall such Holder be bound by, for purposes of illustration only, and without limitation, (i) the Plan, (ii) any statement, admission, commitment, valuation or representation contained in the Plan, the Disclosure Statement, or the Related Documents or (iii) the classification and proposed treatment (including any allowance) of any Claims in this Plan. The foregoing shall not impair 31st Funding to seek a substantial contribution claim pursuant to section 503 of the Bankruptcy Code

14.8    <u>Captions.</u>  Article and Section captions used in the Plan are for convenience only and will not affect the construction of the Plan.

14.9    <u>Method of Notice.</u>   Any notice or other communication hereunder shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended (or, in the case of notice by facsimile transmission or e-mail, when received and telephonically or electronically confirmed), addressed as follows:

If to 31st Funding, Plan Proponent or the Plan Administrator:

**If to the Plan Proponent and/or Plan Administrator:**

31st Funding LLC
c/o Ravert PLLC
16 Madison Square West, FL12, #269
New York, New York 10010
Attn.: Gary O. Ravert, Esq.
Email: gravert@ravertpllc.com
*Attorneys for 31st Street Funding, the Plan Proponent*

**If to the Debtor:**

Rosalyn Maldonado P.C.
108 S. Franklin Avenue, Ste 11
Valley Stream, New York 11580
Email: rmaldonado@rosalynmaldonadopc.com
*Attorneys for Majostan Corp.*

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court

14.10    <u>Amendments and Modifications to Plan.</u>  The Plan may be altered, amended or modified by the Plan Proponent, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code.  The Plan Proponent may also seek to modify the Plan at any time after confirmation so long as (a) the Plan has not been substantially consummated, and (b) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

14.11    <u>Section 1125(e) of the Bankruptcy Code.</u>  Confirmation of the Plan will constitute a finding that 31st Funding has proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

14.12   Entire Agreement.  The Plan, as described herein, and the Disclosure Statement and exhibits thereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed to by the parties in writing.

14.13   Post-Confirmation Obligations.  Under current applicable law, the Plan Administrator for and on behalf of the Post-Confirmation Estate, is required to pay fees assessed against Debtor's Estate under 28 U.S.C. § 1930(a)(6) and any applicable interest thereon until entry of an order closing the Chapter 11 Case.  Subject to a change in applicable law, the Plan Administrator shall pay all fees assessed against the Estate under 28 U.S.C. §1930(a)(6) and any applicable interest thereon from the Post-Confirmation Estate and shall file Post-Confirmation reports including a statement of all disbursements made pursuant to the Second Plan until entry of an order closing the Chapter 11Case of Debtor.  Although as of the Effective Date the Debtor's operations shall cease, to the extent that the Debtor has independent reporting requirements Post-Confirmation such reporting requirements shall be unaffected by this Plan.  To the extent that Post-Confirmation reports are due based on the operations of the Post-Confirmation Estate, the Plan Administrator shall be solely responsible for the filing of such reports and the Plan Administrator shall file such post-confirmation reports (i) after the Effective Date of the Plan, (ii) by the 20th day after the conclusion of the relevant reporting quarter, (iii) utilizing forms promulgated in compliance with 28 CFR § 58.8, and (iv) until the entry of a final decree closing this case, conversion of the case to chapter 7, or dismissal, whichever happens earlier.

14.14   Final Decree.  Within 14 days following the full administration of the estate, but not later than 18 months following the entry of the order confirming a plan, the Plan Administrator shall file, on notice to the United States Trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

|  | 31st Street Funding LLC |
| Dated: June 17, 2024 | |
| New York, New York | By: /s/ Doris Shen_____ |
| | Name: Doris Shen |
| | Title: Authorized Signatory |

Prepared By:

RAVERT PLLC

| Dated: June 17, 2024 | |
| New York, New York | By: /s/ Gary O. Ravert |
| | Gary O. Ravert |
| | 16 Madison Square West, FL 12 #269 |
| | New York, New York 10010 |
| | Tel: (646) 961-4770 |
| | Direct Fax: (917) 677-5419 |

Email: gravert@ravertpllc.com

*Attorneys for Plan Proponent*