**RAVERT PLLC**
Gary O. Ravert
16 Madison Square West, FL 12, #269
New York, New York 10010
Tel: (646) 961-4770
Fax: (917) 677-5419

*Attorneys for Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>MAJOSTAN CORP.,<br><br>*Debtor*. | Confirmed Chapter 11<br><br>Case No. 23-40331 (ESS) |

**NOTICE OF SALE OF**
**23-52 31st STREET, ASTORIA, NEW YORK, NY 11105 [Block: 842, Lot: 28]**

# TO ALL CREDITORS AND PARTIES IN INTEREST:

**PLEASE TAKE NOTICE** that, as provided for in the Amended Chapter 11 Plan (the "**Plan**")[1] dated June 17, 2024, confirmed by order entered August 27, 2024 [ECF Doc. No. 90] (the "**Confirmation Order**") by the Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York, the auction sale of the real property located at 23-52 31st Street, Astoria, New York, NY 11105 [Block: 842, Lot: 28] ("**Property**") is scheduled to be sold at auction on December 3, 2024 at 11:00 am with qualifying bids to be received by December 2, 2024 at 5:00 pm. If no qualifying bids are timely received, the Plan Administrator ("**PA**") as authorized seller of the Property will close the sale with the current high bidder with a bid of $1,650,000 plus 6.00% broker's premium. The PA encourages all interested parties to

---

[1] Capitalized terms used herein but not defined herein shall have the meaning ascribed to them in the Plan.

qualify to bid, to the review the Bid Procedures attached hereto as Exhibit A, to contact the PA's broker MYC & Associates and visit its website regarding the Property at:

https://myccorp.com/properties/astoria-mixed-use .

Anyone with questions may also contact the undersigned for more information.

|  |  |
|---|---|
| Dated: October 28, 2024<br>New York, New York | RAVERT PLLC<br><br>By: /s/ Gary O. Ravert<br>Gary O. Ravert<br>16 Madison Square West, FL 12 #269<br>New York, New York 10010<br>Tel: (646) 961-4770<br>Direct Fax: (917) 677-5419<br>Email: gravert@ravertpllc.com<br><br>*Attorneys for Plan Administrator 31st Street Funding* |

# **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

MAJOSTAN CORP.,

          Debtor.

Chapter 11

Case No. 23-40331 (ESS)

-----------------------------------------------------------X

## Auction Sale Procedures

The following auction sale procedures (the "Auction Sale Procedures") shall govern the auction (the "Auction") and sale (the "Sale") of that certain parcel of real property owned by Majostan Corp. (the "Debtor") as debtor and debtor-in-possession, located at located at 23-52 31st Street, Astoria, New York, NY 11105 [Block: 842, Lot: 28] (the "Property") pursuant to the Plan of Liquidation (the "Plan") filed by 31st Funding LLC on April 9, 2024 in the Debtor's chapter 11 bankruptcy case, Case No. 23-40331 (ESS) (the "Bankruptcy Case"), pending before the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court"). The Plan was confirmed by the Bankruptcy Court by Order dated August 26, 2024 (the "Confirmation Order").

      The Confirmation Order and these Auction Sale Procedures govern this Auction. The Property is to be sold by the Court-approved Plan Administrator. The Auction shall take place on December 3, 2024, at 11:00 AM on the Zoom Video conference platform. The Auction contemplates an opening cash bid with a part credit bid part cash bid in the amount of $1,276,271.40. The current opening bid is a $1,650,000 all-cash bid for the Property, plus Broker's fee ("Opening Bidder"). The minimum upset bid is a **cash bid for the Property in the amount of $1,700,000, plus Broker's fee**.[1] The contact information for the Broker is set forth below. As set forth below, the winning cash buyer pays the Broker's fee of 6.00% of the winning cash bid, which fee is in addition to the amount of the winning bid. The sale to the winning bidder, as set forth herein, will close in accordance with these Procedures without further order of the Bankruptcy Court.

      The Property is to be sold pursuant to the Plan subject to all valid leases. Potential bidders may contact the Broker to arrange an inspection of the Property. At the Closing for the Property, the Plan Administrator shall consummate the Closing by delivery of a bargain and sale deed without covenants against grantor's acts and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Bankruptcy Code. The purchaser, whether it be 31st Funding, the Successful Bidder or, if applicable the Back-Up Bidder, shall receive

---

[1] The term "Broker" is defined in the Plan as MYC & Associates.

1

(a) title to the Property executed by the Post-Confirmation Debtor (and if the Post-Confirmation Debtor refuses, executed by the Plan Administrator on the Post-Confirmation Debtor's behalf) for and on behalf of the Post-Confirmation Debtor and its Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (b) together with any and all New York State and other governmental transfer tax returns; and (c) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the transfer and recording of the deed to the Property subject to the Bankruptcy Code section 1146(a) exemption, and to effectuate the transfer of the Property.

The Post-Confirmation Debtor, the Plan Administrator, 31st Funding, and the Broker, do not make any representations or warranties whatsoever, including with respect to tenancies and the validity or existence of leases, if any.  The Property is being sold pursuant to the Plan "AS IS", "WHERE IS" "WITH ALL FAULTS" in its condition on the Closing Date without any representations, covenants, guarantees or warranties by the Plan Administrator, the Post-Confirmation Estate, Plan Proponent or the Broker of any kind or nature whatsoever, and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property. By delivering their respective Qualifying Bids, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither the Plan Administrator, Plan Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property and are not relying on any information provided by the Debtor, Plan Administrator, Plan Proponent or their professionals.  Such Property is sold free and clear of any Liens, claims or encumbrances of whatever kind or nature accrued through the date of the Auction, except the Sale is subject to any and all valid leases, and any such Liens, claims, or encumbrances, if any, shall attach to the Sales Proceeds, and remain subject to any Liens, claims or encumbrances of whatever kind or nature thereafter accrued as of the date of the Auction, .  Any such Liens, claims or encumbrances of whatever kind or nature accruing from and after the Closing Date shall be the responsibility of the person or entity acquiring the Property at the Closing, whether it be 31st Funding through its Opening Bid, or any other entity or person in accordance with the terms of the Plan and Auction Sale Procedures.

1. **Determination of "Qualified Bidder" Status**. By 5:00 p.m. on December 2, 2024, any potential bidder who wishes to participate in the Sale and Auction to bid to acquire the Property must

    (i)   fully disclose the identity of the person or entity that will be bidding for the Property including address, telephone number and email address where the bidder may be contacted,

    (ii)  sign the terms and conditions of sale, which include, among other things, without limitation:

    (a) the representation that the potential bidder has relied solely on its own independent investigation, analysis, appraisal and evaluation of the Property and did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Property,

    (b) the representation that the bid is without contingencies as to financing and/or additional due diligence and agreeing to the buyer's premium of 6.00% of the purchase price to be paid as a Broker's fee to MYC & Associates or such other Broker as is retained to market and conduct the sale auction; and

    (c) the acknowledgment that deposits submitted by Qualified Bidders who do not become the Successful Bidder shall be returned to such Qualified Bidders within three (3) Business Days after the Auction, unless the Qualified Bidder is designated the Back-up Bidder and except as otherwise provided in the Auction Sale Procedures, and

    (iii) tender a good faith deposit in the amount of 10% of the potential bidder's bid (the "Deposit") in immediately available funds has been made (or is concurrently being made) by wire transfer to the Plan Administrator's counsel's trust account, pursuant to wire instructions to be provided by the Plan Administrator's counsel be a "Qualified Bidder", which wire instructions will be provided to Bidders at the time of Qualifying.

2. 31st Funding and George Tsioulias are deemed to be Qualified Bidders.

3. The Successful Bidder who is the Opening Bidder which makes a cash bid above its Opening Bid shall, within two (2) Business Days after the Auction, increase the Deposit as necessary to an amount equal to ten (10%) percent of its final bid above its Opening Bid at the Auction, time being of the essence to increase the Deposit.

4. The closing of the sale to the Successful Bidder shall occur thirty (30) Calendar Days after the Auction, or on such other date as the Broker shall otherwise agree to in writing, or may otherwise be directed by Bankruptcy Court order, time being of the essence.

5.  If a Qualified Bidder is determined by the Broker to have submitted the second highest bid at the Auction (the "<u>Back-up Bid</u>") and, therefore, to be designated the back-up bidder (the "Backup Bidder"), and is notified in writing that Plan Administrator has determined to proceed with the Back-up Bid after default by the Successful Bidder, such Back-up Bidder shall close on the purchase of the Property on the Back-up Closing Date (defined below), with time being of the essence to the Back-up Bidder's obligation to close on the Back-up Closing Date and to pay the balance of the purchase price at Closing;

6.  The Successful Bidder shall agree that the Deposit shall become nonrefundable and shall be forfeited by such Successful Bidder as liquidated damages if that bidder fails to close the purchase for any reason whatsoever on the Closing Date, and the same shall be true with respect to the Back-up Bidder if the Plan Administrator decides to proceed with the Back-up Bid.

7.  **Auction.** The Auction shall be noticed for and conducted on December 3, 2024, at 11:00 a.m. The Auction shall be conducted via Zoom Video with Zoom links being sent out to Qualified Bidders in the late afternoon on December 2, 2024, after all potential bidders have qualified. The Auction shall be governed by the following procedures:

    (i)   Only 31st Funding, the Plan Administrator, the Debtor, Qualified Bidders, and their respective counsel, agents and designated representatives may participate at the Auction, and only such parties, any brokers or auctioneers appointed by Order of the Bankruptcy Court in the Bankruptcy Case and a stenographer may be present throughout the Auction;

    (ii)  Only Qualified Bidders shall be entitled to make any subsequent and additional bids at the Auction;

    (iii) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

    (iv)  Only Qualified Bidders shall participate personally or through a duly authorized representative at the Auction;

    (v)   The current Back-up Bid at the auction shall be in the amount of $1,276,271.40 and the buyer's premium associated with this part cash bid, part credit bid is $25,000 plus expenses in an amount not to exceed $10,000;

    (vi)  The Opening Bid is $1,650,000 for the Property, **plus a buyer's premium of 6.00%** of the purchase price to be paid as Broker's fee to MYC & Associates (the "<u>Opening Cash Bid</u>"). Any Credit Bidders who is a Qualified Bidder is deemed qualified to bid in

4

        amount equal to the Opening Cash Bid above. Qualified Bidders may thereafter make successive bids in increments of at least $50,000 until $1,700,000 is reached and then in $25,000 increments (the "<u>Bid Increments</u>") higher than the previous bid, or such larger or smaller amount as the Broker may deem appropriate;

(vii)    The Plan Administrator has, after consultation with the Broker, entered into a contract of sale with a stalking horse bidder with bid protections of up to 3% of the purchase price in provable expenses in the event the stalking horse bidder is out bid, which bid protections shall be come an expense of the sale and shall be paid at Closing from the Sales Proceeds.

(viii)    Provided there is at least one additional Qualified Bidder with a bid equal to or greater than the Opening Cash Bid, the Auction shall be conducted and continue until such time as it appears to the Broker that none of the Qualified Bidders is prepared to advance the Auction and there is only one offer that the Broker determines is the highest or best offer submitted at the Auction from among the Qualified Bidders (the "<u>Successful Bid</u>") for one or both of the Property. The Broker shall give fair warning of the close of bidding. Provided that at least one bidder makes a bid greater than $1,276,271.40, which is the current Back-up Bid, the Auction be conducted to determine the Successful Bidder and the Back-up Bid. If no Qualified Bidder makes a bid of at least $1,276,271.40, no Auction shall be conducted.

(ix)    If more than one Qualified Bidder submits a bid in excess of the Opening Cash Bid, after selection of the Successful Bidder, then the Broker shall determine which Qualified Bid constitutes the Back-up Bid;

(x)    In considering bids submitted by Qualified Bidders at the Auction, the Broker may request that Qualified Bidders provide for review, at the Auction, financial information which fairly and reasonably demonstrates the Qualified Bidder's ability (and the sources of the Qualified Bidder's ability) to close on its purchase of the Property if the Qualified Bidder should be the Successful Bidder based upon the bids submitted at the Auction, except that a Credit Bidder shall not have to provide such financial information unless it bids in excess of the Opening Cash Bid in which case, the Credit Bidder shall provide sufficient information to demonstrate its ability to close on its final bid with credit given for the Credit Bid;

5

 (xi) Deposits submitted by Qualified Bidders who do not become the Successful Bidder or Back-up Bidder shall be returned by the Plan Administrator to such Qualified Bidders within three (3) Business Days after the Auction, except as otherwise provided herein;

 (xii) Except for Credit Bidders, bids at the Auction must be all cash, without financing or other contingencies provided however that any portion of a Credit Bid that has been disallowed shall be made up by such Credit Bidder in cash and any bids that are combination Credit Bids and cash bids, the cash bid portion shall comply with all cash bid procedures specified herein; and

 (xiii) Bids at the Auction must be able to close on the Sale of the Property within thirty (30) days after the Auction.

8. **Obligation to Close and Default**.
 (i) The Successful Bidder (or, upon consent of the Plan Administrator, in writing, at or prior to the Closing, an assignee of the Successful Bidder) shall close on the purchase of the Property and pay the amount of the Successful Bid, less its Deposit previously posted, on the Closing Date, with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**. The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder not to proceed at the Closing other than the inability of the Plan Administrator to deliver title to the Property. In the event the Successful Bidder shall fail to timely close on the purchase of the Property in accordance with all the provisions of the sale agreement established between the Successful Bidder and the Plan Administrator (a "Successful Bidder Sale Agreement"), the Successful Bidder shall be in default and the Successful Bidder shall forfeit its Deposit. Notwithstanding the foregoing, the Broker shall have the right, but not the obligation, to extend the time for Closing by the Successful Bidder up to an additional ten (10) Business Days (the "Adjourned Closing Period"), with **TIME BEING OF THE ESSENCE** as to the Successful Bidder's obligation to close during such Adjourned Closing Period; and in such event, if the Successful Bidder shall fail to close the purchase of the Property prior to expiration of the Adjourned Closing Period, the Successful Bidder shall be in default and shall forfeit its Deposit.

      (ii)      If for any reason the Successful Bidder shall fail to timely close the Sale of the Property and the Plan Administrator determines to proceed with the Back-up Bid, the Back-up Bidder (or, upon consent granted by the Plan Administrator in writing at or prior to the Back-up Closing Date, an assignee of the Back-up Bidder) shall close on the purchase of the Property and pay the amount of the Back-up Bid, less its Deposit previously posted, on the later of the Closing Date or twenty (20) Business Days after written notice of the Successful Bidder's default in closing (the "<u>Back-up Closing Date</u>"), with **TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**. If the Plan Administrator proceeds with the Back-up Bid, then the Back-up Bidder shall be obligated to close title to the Property and there shall be no contingency of any kind or nature that will permit the Back-up Bidder not to proceed on the Back-up Closing Date other than the inability of the Plan Administrator to deliver title to the Property. In the event the Back-up Bidder shall be obliged, but shall fail, to timely close the purchase of the Property in accordance with the provisions of the Sale agreement established between the Back-up Bidder and the Plan Administrator (a "<u>Back-up Bidder Sale Agreement</u>"), the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit. Notwithstanding the foregoing, the Broker shall have the right, but not the obligation, to extend the time for Closing by the Back-up Bidder up to an additional ten (10) Business Days (the "<u>Adjourned Back-up Closing Period</u>"), with **TIME BEING OF THE ESSENCE** as to the Back-up Bidder's obligation to close prior to the expiration of the Adjourned Back-up Closing Period; and in such event, if the Back-up Bidder shall fail to close the purchase of the Property prior to expiration of the Adjourned Back-up Closing Period, the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit.

9. **Deposits of Successful Bidder and Back-up Bidder**.
      (i)      The Deposit submitted by the Successful Bidder shall be held by the Plan Administrator pending the closing of the Sale. The Successful Bidder's Deposit shall be applied to the Sale price upon the closing of the Sale, unless the Successful Bidder defaults and fails to close in accordance with the provisions of the Successful Bidder Sale Agreement and forfeit its Deposit.

      (ii)      The Deposit submitted by the Back-up Bidder shall be held by Plan Administrator's counsel in its trust account until the earlier of (i) the Closing, or (ii) thirty (30) Calendar Days after the

7

        Auction; provided, however, if the Successful Bidder fails to close and Plan Administrator decides to proceed with the Back-up Bid, then the Back-up Bidder's Deposit shall continue to be held by the Plan Administrator's counsel and shall be applied to the Sale price upon the closing of the Sale on the Back-up Closing Date, unless the Back-up Bidder shall default under the provisions of the Back-up Bidder Sale Agreement and fail to close and forfeit its Deposit, which shall be remitted to the Plan Administrator for due administration in accordance with the Plan.

10. **Due Diligence**. Each Qualified Bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid. Interested bidders may contact the Broker to arrange an inspection.

11. **Failure to Close**. If the Debtor, or the Plan Administrator on the Debtor's behalf, is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court enters an order for any reason blocking the sale of the Property, the Plan Administrator 's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, or the Back-up Bidder, and upon such refund, the Successful Bidder or Back-up Bidder will have no claim or recourse against the Plan Administrator, the Broker, the Debtor, the Plan Proponent or any of their professionals.

12. **Right to Withdraw Sale**. The Plan Administrator reserves the right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Plan Administrator deems necessary or appropriate.

13. **31st Funding's Designee**. Notwithstanding anything to the contrary herein, 31st Funding shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Qualifying Deposit or complying with the other requirements otherwise necessary to bid, and, if the Successful Bidder and Purchaser, shall be entitled to purchase the Property subject to some or all of the 31st Funding's mortgage.

14. **Reservation of Rights**. In the interest of maximizing the results realized through the Auction, Plan Administrator reserves the right, upon further order of this Court, to: (a) modify any of the deadlines set forth in these Auction Sale Procedures; (b) modify or waive, at or prior to the close of the Auction, the procedures and terms and conditions regarding the Sale of the Property; (c) adjourn the Auction; or (d) offer, but shall not be required to offer, a break-up fee to any cash bidder, which break-up fee shall be limited to 3% of the bid in provable expenses. The Plan Administration in consultation with the Broker shall have the discretion to further extend the Closing Date upon request of

    the Successful Bidder or Back-up Bidder beyond the 10 day extension addressed above), but such extension/adjournment shall be limited to a single thirty (30) day extension after the original Closing Date deadline (as extended) and, <u>provided that</u> as a condition to such extension, the Successful Bidder or Back-up Bidder (as appropriate) shall (i) pay an additional ten percent (10%) purchase price deposit at the time of the extension, and (ii) pay the real estate taxes for the extension period.  Anything to the contrary contained in these Auction Sale Procedures notwithstanding, the Broker shall have the right to adjourn the Closing Date or the Back-up Closing Date to remedy any defect to title of the Property, but such adjournment shall be limited to sixty (60) days following the original Closing Date deadline (as extended).  Notwithstanding the foregoing, the Broker shall provide not less than 24 hours' written notice to the Court, the Office of the United States Trustee, and all parties who filed notices of appearance in this case if: (a) the Broker changes any deadlines set out in the Auction Sale Procedures, or (d) if the Broker decides for cause to adjourn the auction.

15. **Additional Terms, Conditions and Procedures**.  Unless an objection to the Closing of the Sale of the Property is timely filed with the Bankruptcy Court, the Sale is final.  Objections to the sale, if any. will be held at a hearing to be held at a date and time to be determined before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800.

16. **Broker Contact Information.**  MYC & Associates, 1110 South Ave, Staten Island, NY 10314; Attn: Marc Yaverbaum, Tel: (347) 273-1258; Email: my@myccorp.com; Website: http://www.myccorp.com.

THE UNDERSIGNED BIDDER HEREBY CONSENTS TO AND AGREES TO BE BOUND BY THE FOREGOING AUCTION SALE PROCEDURES:

Print Name of Bidder: _____

Print Name and Title of Authorized Representative of Bidder: _____

_____

Signature of Authorized Representative: _____

Date: _____